```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY

ROBERTS,                            .
                                    .
        Plaintiff,                  .
                                    .  Case No. 15-cv-07061
vs.                                 .
                                    .  Newark, New Jersey
COUNTY OF ESSEX, et al.,            .  October 17, 2017
                                    .
        Defendants.                 .
                                    .
```

                    TRANSCRIPT OF TELECONFERENCE
              BEFORE THE HONORABLE JAMES B. CLARK, III
                   UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:      MIREL FISCH, ESQ.
                        The Law Office of Anthony M.
                        Grandinette
                        114 Old Country Road
                        Suite 420
                        Mineola, NY 11501
                        (516) 877-2889
                        mirel.grandinettelaw@gmail.com




Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

```
 1   (APPEARANCES continued)

 2   For the Defendants:     ALAN R. RUDDY, ESQ.
                             Office of the Essex County Counsel
 3                           Hall of Records
                             465 Dr. Martin Luther King Boulevard
 4                           Room 535
                             Newark, NJ 07102
 5                           (973) 621-5021
                             aruddy@counsel.essexcountynj.org
 6
                             GARY S. LIPSHUTZ, ESQ.
 7                           City of Newark Department of Law
                             920 Broad Street
 8                           Room 316
                             City Hall
 9                           Newark, NJ 07102
                             (973) 733-3880
10                           lipshutzg@ci.newark.nj.us

11                           BENJAMIN HENRY ZIEMAN, ESQ.
                             State of New Jersey
12                           Office of the Attorney General
                             Department of Law & Public Safety
13                           25 Market Street
                             P.O. Box 116
14                           Trenton, NJ 08625
                             (609) 292-1575
15                           benjamin.zieman@dol.lps.state.nj.us

16                           ROBERT P. PREUSS, ESQ.
                             Office of the Attorney General
17                           Division of Law
                             P.O. Box 112
18                           25 Market Street
                             Trenton, NJ 08625-0112
19                           (609) 777-4889
                             robert.preuss@law.dol.lps.state.nj.us
20
                             SUZANNE MARIE DAVIES, ESQ.
21                           State of New Jersey
                             Office of the Attorney General
22                           25 Market Street
                             P.O. Box 112
23                           Trenton, NJ 08625
                             (609) 633-3985
24                           suzanne.davies@dol.lps.state.nj.us

25
```

1                (Commencement of proceedings at 11:10 A.M.)

2

3                THE COURT:  Hey, folks, Judge Clark here.  Let me

4    say before we get started, we're on the record in Roberts

5    versus County of Essex.  That's Docket Number 15-7061 (KM).

6    And it is about 11 minutes after 11 in the morning on

7    October 17th, 2017.

8                Can I have appearances of counsel, please?

9                MS. FISCH:  For the plaintiff, Mirel Fisch.  Good

10   morning, Your Honor.

11               THE COURT:  Good morning.

12               MR. LIPSHUTZ:  Good morning, Judge.  This is Gary

13   Lipshutz, assistant corporation counsel for defendant City of

14   Newark and Eutsey.

15               THE COURT:  Good morning.

16               MR. RUDDY:  Good morning, Judge.  This is Alan

17   Ruddy on behalf of the County of Essex.

18               THE COURT:  Good morning.

19               MR. PREUSS:  Good morning, Judge.  This is deputy

20   attorney general Robert Preuss and deputy attorney general

21   Suzanne Davies on behalf of public defenders Martone and Van

22   Jura.

23               THE COURT:  Good morning.

24               MR. ZIEMAN:  Good morning, Your Honor, this is --

25   this is Benjamin Zieman, deputy attorney general for the

1   Essex County Prosecutor's Office, Laurino and Bolan.

2          THE COURT:  Okay.  Good morning.

3          Look, I have two lengthy letters that purport to be

4   joint letters, Documents 116 and 117 on the docket.  And they

5   were filed on September 28th, 2017.  These -- the first of

6   the letters, Document 116, deals with a number of requests

7   for production that the plaintiff is complaining have not

8   been satisfied.  And the second letter, 117, deals with a

9   number of interrogatories that the plaintiff is claiming

10  weren't properly answered.

11         I can go through this at length; maybe I have to.

12         But, Ms. Fisch, isn't most of this -- it seems to

13  that just about every response or every -- every problem here

14  is a problem where you've made a request and the other side

15  has said, you know, we've conducted a -- a search for this

16  stuff, and we've given you what we've got, but we can't find

17  anything else.

18         I mean, what do I do with that?

19         MS. FISCH:  Well, a couple of points, Your Honor.

20  There are some documents that we don't know if they still

21  exist right now, but we know that in the past they did exist.

22  And if they are no longer in the possession of the police

23  department, according to Emelia Perez -- I know she's not on

24  the line right now, but she indicated that numerous

25  individuals from the City of Newark Police Department have

1    searched for these documents.  If she would identify them to

2    me so I know who searched or where they searched and the fact

3    that can't be found, you know, that's something I could work

4    with.  But most of the responses say that while conducting a

5    search, you know -- if there's still documents under cover,

6    they be produced.

7            I mean, look, does that mean that discovery's going

8    to -- you know, this -- going to be searching for, like,

9    three years?  I -- you know, it's --

10            THE COURT:  Well, they're obligated to conduct as

11    good a search as they possibly can, and if they don't and if

12    things are missing that they really ought to have, I mean,

13    then can't you make a pitch that you get negative inferences

14    or at least make the claim that, you know, this stuff ought

15    to be there.  The fact that it's not there -- I mean, somehow

16    that seems to me might work -- you might be able to get an

17    assumption or an inference that that works in your favor.

18            But the problem is you can't produce what you don't

19    have.  And, you know, I --

20            MS. FISCH:  Right.  I --

21            THE COURT:  You know?  Go ahead.  Go ahead.

22            MS. FISCH:  I understand that.  And with respect to

23    negative inferences, obviously, you know, if the documents

24    ultimately are not produced, that's certainly something that

25    I would be seeking.

1          But that doesn't address all the issues.  For

2   example, some responses indicate -- I'm just going to pick

3   one of the early ones -- you know, this gallery number, this

4   mugshot photograph that's been in existence for, you know, at

5   least 1986 and technically probably 1984.  And the response

6   that was given is not actually responsive.  For example, they

7   provided information that a lieutenant searched gallery

8   photos and this gallery photograph is not included -- the

9   actual response.  And a subsequent affidavit states that

10  gallery photos -- gallery folders -- I'm sorry -- don't

11  actually contain the photos.  So the search is not being made

12  in the proper location.

13          If they could indicate where the proper locations

14  where certain documents would ordinarily be maintained and

15  then -- okay, they're not here, we can't find them, you know,

16  that would be okay.  But the responses don't indicate that

17  the proper place of --

18          THE COURT:  All right.  You know what, Ms. Fisch?

19  What I think I've got to do is go through these one at a

20  time, and if there's couple that are like that, maybe we'll

21  make some sort of a ruling.

22          Let's -- let's turn to Document 116, the document

23  that deals with the -- with the document requests.

24          Now, the first one, we're looking for the complete

25  file maintained by the police department regarding this

1  complaint.  And the defendants have claimed that they have

2  produced what they've got.

3          Any -- anything more that they can do on that one,

4  Ms. Fisch?

5          MS. FISCH:  Two things.  With this one

6  specifically, in my discussions with Emelia Perez is that she

7  would indicate which documents were actually in their -- you

8  know, this criminal file rather than referencing, you know,

9  3,000 documents that, you know, postdate this incident by

10 then, you know, 15, 20 years, which, clearly, were not

11 actually from their original criminal file, I just wanted to

12 know what was there for the investigation, prior to the

13 conviction.  And I was told that I would get this

14 identification, but so far hasn't happened.  I was also told

15 by the chemist who performed the serology test in '86 that

16 the laboratory maintains these index cards for each file that

17 has pertinent information regarding the transfer of materials

18 from and to the Newark forensic laboratories, that I was told

19 that document would be searched for, but I haven't gotten a

20 response on that either.

21         THE COURT:  Mr. Lipshutz, Mr. Ruddy, I mean, can we

22 do that with respect to request Number 1?

23         MR. LIPSHUTZ:  Good morning, Your Honor.  Gary

24 Lipshutz.

25         As I understand with regard to the index cards,

1    that was something -- forgive me, but I also realize that

2    Ms. Fisch and Ms. Perez have been dealing with this directly,

3    and Emelia's right now on her feet before Judge Mitterhoff on

4    a trial.

5            My understanding is that the index cards,

6    information has just recently come to light.

7            Mirel, is that right?

8            MS. FISCH:  Yes, I have -- I did mention it to

9    Emelia in one of our conversations.  Recently.  It was fairly

10   recently before the letter was filed.

11           MR. LIPSHUTZ:  Okay.  So I think Emelia indicated

12   that we're going to request for index files.  So that is only

13   a recent development.

14           The --

15           THE COURT:  All right.  Well, then we'll just

16   instruct the --

17           MR. LIPSHUTZ:  I will say this.

18           THE COURT:  Yeah.

19           MR. LIPSHUTZ:  I'm sorry, Judge.

20           THE COURT:  Go ahead.  Go ahead.

21           MR. LIPSHUTZ:  Okay.  With regard to the documents

22   in the file for this incident in the sex crimes file, which

23   was is a 1996 investigation, we can't find the file.  So I

24   just don't -- I don't know what else to say.  We can't find

25   the file.

1          And I know that we can't find the file.  And I'll

2    represent to Your Honor that I have looked in the property

3    room, in eight floors of property room, which contains tens

4    of millions of the items.  I have tried my very best to find

5    this file.

6          We found an archived box from 1996 from the sex

7    crimes department, which would contain in the sequential

8    number, this particular file.  If you look at the CC number,

9    which is 98542, that would be the -- excuse me -- 38542, that

10   would be the 38,542 investigation or police action from 1996.

11         We found the documents in that range, the file --

12   excuse me -- the box.  But the file itself was not there.

13         So I can't give -- we can't give a file that we

14   can't find.  And I don't know what would in that file.  I

15   suspect the photograph would have been in that file.  I can't

16   find it, though.

17         THE COURT:  All right.  So, you know, Ms. Fisch,

18   what am I going to do?  Look.  I can tell him to follow up

19   with all these document requests to the extent you mentioned

20   in the letter, but they're going to give you what they've

21   got.  It doesn't -- I mean, I don't have a situation in front

22   of me where anybody's denying your right to have any of this

23   stuff.  They're just saying they don't have it.

24         MS. FISCH:  Right.  I understand that.

25         Judge, then if I could request that this response

1   that was given, if it could be submitted as a formal

2   response, so it's part of the discovery responses, then it's

3   something that I could work with, rather than just the oral

4   representation by counsel over the phone, you know, if they

5   supplement the response with this information, then that's

6   fine with me, because then, you know, there we have it, you

7   know, something I could use.

8           THE COURT:  All right.  Well, I mean, we are on the

9   record, so it's not something that I would think Mr. Lipshutz

10  would be free to retract at some -- I mean, if he finds the

11  file, fine, but if that remains the situation, it remains the

12  situation.

13          Look, I'm going to instruct the government to -- or

14  the City of Newark to confirm in writing for the plaintiff

15  that the stuff in response to Document REQUESTS 1, 2, 3, 5,

16  6, 7, 8, 9, 10, 11, and 12 does not exist and that a, you

17  know, full and thorough search has been conducted for this

18  stuff.  And, you know, the government of Newark and as do all

19  the parties in this case, retain an obligation to continue to

20  look and to seasonably amend their responses if and when they

21  should find something.  But I -- you know, I don't know

22  that -- I think I'm going to be spinning my wheels going

23  through each one of these and just having the -- and having

24  Mr. Lipshutz tell me we've looked for it, we don't have it.

25          So that's what we're going to do.  We're going to

1   have the City of Newark write that letter, confirm that none

2   of this exists, and confirm that they've made an adequate

3   search for all of it so that we can move on.

4          With respect to the interrogatories, which is

5   Document Number 117, I guess the first issue is certification

6   of the interrogatory answers.  And you all -- the -- the City

7   of Newark had -- the defendant Eutsey certify the answers.

8   That was because there's nobody else with any knowledge.

9          Is that right, Mr. Lipshutz?

10          MR. LIPSHUTZ:  We are doing our best to find

11   people.  We can't.  This was a 1996 incident, and Eutsey does

12   not work for the City either, but we got him to sign off.  We

13   are doing our best to find people.  And that's -- that's the

14   problem we have here.  This was 21 years ago.  And goodness

15   knows, we'd like to have these files and the records, but we

16   don't.  So that's -- that's what we have.  We've given them

17   what we have I.  Don't know what else we can do.

18          THE COURT:  Ms. Fisch?

19          MR. LIPSHUTZ:  I don't know what else we can do.

20          MS. FISCH:  With respect to --

21          MR. LIPSHUTZ:  I mean, so, Judge, we have to put

22   this in perspective, let me just interrupt one more second.

23          Your Honor has to put this in the perspective of

24   this was a plea of guilty prior to any trial, prior, to, I

25   believe, any indictment, and then there were rounds of

1   postconviction hearings that were dealt with at the

2   prosecution level that didn't involve the City and just --

3   this was done without the City involvement for many, many,

4   many, many years.  So it's hard.

5           Now, we're trying to find chemists, apparently.

6   Ms. Fisch has found one.  We'll probably need to speak to

7   that chemist.  But we're in as difficult a circumstance as

8   they are, in the same circumstance.

9           THE COURT:  Ms. Fisch?

10          MS. FISCH:  With respect to the interrogatories, I

11  understand what Mr. Lipshutz is saying.  The only issue I

12  have with that is most of the interrogatories don't deal with

13  the actual '96 investigation.  Most of them deal with the

14  policies, procedures, you know, practices regarding

15  maintaining evidence, you know, mugshot photographs, the --

16  you know, handling DNA evidence, testing, things like that.

17          And given that the DNA material, which contained

18  the exonerating samples on it, was discovered in 2013, it's

19  not that long ago, it's only a couple of years ago.  And a

20  lot of the interrogatories ask about things that go all the

21  way through 2013.  And even though they may not have anybody

22  who currently works at the Newark Police Department, who

23  worked in '96, they certainly have people who worked there in

24  2013.  For example, Lieutenant McFee [phonetic], she's the

25  one who actually found those missing DNA materials.  She, I

1    understand, still works there.  She did provide certain

2    information that resulted in some of these responses.  I know

3    she said that, you know, she can't remember things.  But she

4    still works there.  Other people who worked in the property

5    bureau where the file was maintained, where the DNA material

6    was located, they still work there.  I'm not asking --

7         THE COURT:  Well, Ms. Fisch, let me just ask you on

8    a practical level, wouldn't it make more sense or wouldn't it

9    be potentially more fruitful for you, rather than spinning

10   our wheels with these interrogatory answers, to actually

11   depose these people?

12        MS. FISCH:  I would love to do that if I was given

13   names of people to speak to.  And that's one of the things I

14   mentioned with respect to documents, if they told me who

15   worked in certain areas, who searched for documents, then I

16   know who to talk to.  But I'm not -- other than -- for

17   information from the postconviction relief proceedings, I

18   don't know who these people are that still work there.  Once

19   I get their information, then, obviously, that would be the

20   most productive way to get the information I'm looking for.

21   But I don't know who they are.

22        And that goes back to the issue with respect to the

23   certification.  Eutsey certified the initial response.  He

24   did not provide a certification for the supplemental

25   responses.  None of the supplemental responses contains

1  information obtained from him.  So if the people who did the

2  search, they certify with respect to that, yes, we searched,

3  no, we can't find them, no, we don't have this information,

4  then at least I know who to talk to.  But right now, I don't

5  have anyone that I can point to and say, okay -- the

6  information I'm looking for.

7          THE COURT:  Well, Mr. Lipshutz, Mr. Ruddy, what are

8  we going to do about that?

9          MR. RUDDY:  Judge, as far as I'm concerned, just

10  to -- I have nothing -- the County of Essex has nothing to do

11  with any of this case factually, Your Honor.

12          THE COURT:  All right.  Well, Mr. Lipshutz, what

13  are we --

14          MR. RUDDY:  -- prosecutor's office and Newark who

15  were involved.

16          MR. LIPSHUTZ:  Gary Lipshutz, Judge.

17          It's been a collaborative effort in the Newark

18  police division.  I personally -- although I don't want to be

19  deposed, but I know I've been looking.  And if we have to

20  designate a witness to be deposed, I'd be happy to do that.

21  And we'll designate someone.  It has been a collaborative

22  effort.

23          We have in the Newark police division a liaison

24  unit, a legal -- legal liaison unit.  There are detectives

25  and lieutenants.  They are the ones who are to go out and

1   search for things.  We have -- the lawyers, Emelia and I,

2   have searched.  We've had people from, like, a Lieutenant

3   Evangelista, who is the commander of the crime scene unit who

4   went through the gallery matters.  I mean, he certainly has

5   been identified.  Lieutenant McFee, who was involved in the

6   sex crimes unit a long time ago, although not in 1996.  But

7   she certainly could be deposed.

8            I'll be happy to produce people for Ms. Fisch to

9   ask questions of.  That would be my pleasure to do so.

10           So I hope I -- I don't know.  There's -- it seems

11   to me, though, that --

12           THE COURT:  My question here is --

13       (Simultaneous conversation)

14           MR. LIPSHUTZ:  -- is to find this stuff.

15           THE COURT:  Am I going to go through each one of

16   these interrogatories and have you say, oh, you know, we've

17   given what we've -- we've answered what we can answer, and --

18   or are we just going to, Ms. Fisch, move on and try to

19   identify people we want to depose?

20           MS. FISCH:  I'm good with trying to identify

21   people, and if need be, if I need to follow with, you know,

22   supplemental interrogatories based upon, you know, the

23   documents at deposition, then I can do that.  I think that

24   would be probably work best for everyone.

25           THE COURT:  Yeah, well, you know what?

 1   Supplemental interrogatories, if you have supplemental

 2   document requests, I think that's useful, you know, after

 3   deposing people.  But supplemental interrogatories, let's ask

 4   the questions we have to ask when we have somebody actually

 5   there to testify.  All right?

 6           MS. FISCH:  That's fine.  The -- obviously, you

 7   know, we may run into issues with respect to the limited

 8   number of depositions.  But obviously we can always ask to

 9   depose more people.

10           THE COURT:  Well, who do we have identified -- I

11   guess in lieu of going through each one of these

12   interrogatories and predictably getting a response from the

13   City that we just -- we've given you what we've got, we don't

14   have anything more, I think the order that I'll make with

15   respect to this letter is that the City will make -- will

16   make its best efforts to have the appropriate people certify

17   answers to interrogatories and will identify proper people

18   for deposition, including, perhaps, a 30(b)(6) deposition.

19   All right?

20           MR. LIPSHUTZ:  I think that would be the best move,

21   respectfully, Your Honor, to do a 30(b)(6) with the topics,

22   and then we can identify who from the City will testify as

23   best as possible.  I mean, I do know that we have turned over

24   the policies and procedures from -- that we have back in 1996

25   through the pertinent time frame.  It's just identifying

1   individuals who will do something other than say, yeah, this

2   was the policy.  I didn't write it, but this was the one that

3   was there at the time.  You know, that might just be all we

4   have.

5           THE COURT:  All right.  And the other thing I'll

6   say is following depositions, the plaintiff may serve any

7   appropriate document requests growing out of the depositions.

8           MS. FISCH:  Judge, if I could just go back to the

9   last few document demands that dealt with the policies and

10   procedures --

11           THE COURT:  Right.

12           MS. FISCH:  -- request the last three categories,

13   8, 9, 10, 11, and 12, with respect to these, I understand

14   that I was given general orders that -- certain topics.  The

15   only issue is that these general orders did not necessarily

16   include actually most of the requested information.  I was

17   told as the formal responses to the document demands that

18   indicate that.  That -- actually, I don't know if it was in

19   the formal responses.  Ms. Perez indicated that if there were

20   no general orders from the City of Newark, that the attorney

21   general's office guidelines would be used.  But to date,

22   nobody has identified which guidelines were actually used.

23   Ms. Perez indicated that I could find them online, but to go

24   through the history of the attorney general's guidelines and

25   pull out every single one, if I could get the ones that were

1    actually -- identified, then, you know, that would be

2    responsive to some of these requests.  Otherwise, I know

3    Your Honor indicated you didn't want to go through them one

4    at a time, but the actual documents produced do not, for the

5    most part, respond to the request.

6              THE COURT:  Yeah, I mean, it's not that I don't

7    want to go through them one at a time.  I just think I'm

8    going to, you know, get a predictable and repetitive answer

9    that we've given what we have.

10             I appreciate you bringing that up.  What I guess I

11   can do is with regard to responses to Requests 8, 9, 10, and

12   11.  The City will identify --

13             MS. FISCH:  -- Your Honor.  I'm sorry.

14             THE COURT:  Yes?

15             MS. FISCH:  Request 12 -- that last one.

16             THE COURT:  What?

17             MS. FISCH:  It's 8, 9, 10, 11, and 12, which is on

18   the last page.

19             THE COURT:  All right.  8 to 12.  I was just

20   looking at the answers.  It looked like the -- it looked like

21   they didn't mention attorney general guidelines in their

22   response to 12.

23             But, all right.  With respect to 8 to 12.  I'm

24   going to say also with respect to responses to requests 8 to

25   12, the City will identify specifically the attorney general

1   guidelines that are implicated.  All right?

2          MR. LIPSHUTZ:  Judge, I'll be happy -- I'm just

3   trying to keep up with you here, and I understand that --

4          THE COURT:  Well, we'll put this all in an order --

5          MR. LIPSHUTZ:  -- there are -- were any at some of

6   these times.  I'm just -- you know, this was a novel, growing

7   field of jurisprudence with respect to certain things like

8   DNA, so I'm not sure there were any guidelines, but to the

9   extent that there's an AG guideline that we can identify, I'm

10  going to make sure that Emelia is on that.

11         THE COURT:  Right.

12         MR. LIPSHUTZ:  Okay?

13         THE COURT:  Right.  So the -- so that Ms. Fisch

14  gets the responses that she wants to those last four that

15  she's still lacking and that, you know, you should be able to

16  be at least advise her on.

17         And, Ms. Fisch, you had something else?

18         MS. FISCH:  Yeah, I just want -- with respect to

19  the group 9, 10, 11, the -- I know Ms. Perez indicated that,

20  you know, if there were attorney general guidelines, then,

21  you know, those would have been used.  The only issue I have

22  with that is the attorney general would not have made

23  specific guidelines as to how and where specifically in the

24  Newark Police Department evidence will be stored, where --

25  you know, how they will be transferred, things like that.  I

1   just don't think that makes any sense.  They're not going to

2   make rules for specific police departments.  So I don't think

3   that, you know, just referring to the attorney general

4   guidelines would be completely responsive.

5          So there are other documents, other than general

6   orders that contain -- procedures.  For example -- and I

7   pointed this out to Ms. Perez, one of the procedures that she

8   had provided to me referenced, quote, rules and regulations

9   and manuals of procedure.  I also requested if she could

10  speak with the police academy, because they may have certain

11  information.  One of the general orders that was produced, I

12  think it's for the year 2002, and it indicates it's a new

13  procedure, but at the end of that general order, it says, you

14  know, this is how this procedure's different from past

15  practices.

16         So we know there's other documents out there, which

17  is why even though, you know, to the extent attorney general

18  guidelines were used, those should be identified, but I --

19  based on the documents provided, I know that there are

20  other -- are other documents from the City of Newark that are

21  responsive.  So --

22         THE COURT:  All right.  Well, I'll add "and will

23  provide copies of other rules and procedures referenced in

24  those responses."  All right?

25         MS. FISCH:  Right.  And regardless of what the

 1   title of those rules, you know, may be.  Could be, you

 2   know --

 3              THE COURT:  Right.

 4              MS. FISCH:  -- orders -- whatever, you know.  I

 5   don't know what they call their documents.

 6              THE COURT:  Right.  You guys have to continue to --

 7   look, the problem with this, Ms. Fisch, is it doesn't sound

 8   like anybody's being uncooperative with one another.  I mean,

 9   that's generally when I have to insert myself into the

10   problem.

11              They're saying they've given you what they've got,

12   and they just don't have any more.  I think you can

13   probably -- you can probably discuss this with counsel, and

14   they'll -- you know, they'll make the effort to get what it

15   is, and, you know, hopefully that will take care of it.  But

16   I'll specifically direct -- you know, and hopefully Ms. Perez

17   will follow through that, you know, with regard to the

18   responses to Requests 8 to 12, they're going to identify the

19   AG guidelines that are implemented, and they're going to

20   provide copies of other rules and procedures referenced in

21   their responses.  All right?

22              MS. FISCH:  Thank you.

23              THE COURT:  Okay.  We have a deadline of late

24   December for just fact discovery.  At this point, I'm not

25   inclined to mess around with that.  You may, I know, require

1   more time, given -- you know, depending on how this all

2   shakes out, but I think what I'm going to do is rather than

3   extend the discovery deadline right now, I will set a call

4   for sometime in late December, and we'll see if you need more

5   time then.  All right?

6           MS. FISCH:  Okay.

7           DEFENSE ATTORNEY:  That's good, Judge.

8           THE COURT:  All right.  But we'll get this -- we'll

9   get this order out.  It will, you know, indicate the things

10  that we have -- we have talked about today.  I think,

11  frankly, that Ms. Fisch will probably get a lot more traction

12  and make a lot more progress if she starts to depose people.

13  But if you have issues that you want to bring to our

14  attention, you know, let us know.  You know where to find us,

15  and we'll deal with them.  All right?

16          MS. FISCH:  Thank you.  I appreciate it.

17          THE COURT:  All right.  Anything else, folks?

18          DEFENDANT NAME:  Thank you, Your Honor.

19          MS. FISCH:  No.  That's it.

20          THE COURT:  Okay.  Thank you, folks.  Take care.

21          (Conclusion of proceedings at 11:38 A.M.)

22

23

24

25

|Teleconference
|15-cv-07061, October 17, 2017
|Certification

1                        Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 23 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    s/ *Sara L. Kern*                    16th of November, 2017

19    _____          _____
      Signature of Approved Transcriber            Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080
24

25