**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **RODNEY R. ROBERTS,** | Civ. No. 15-7061 (KM) (JBC) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **COUNTY OF ESSEX, et al.,** | |
| **Defendants.** | |

<u>**KEVIN MCNULTY, U.S.D.J.:**</u>

This matter comes before the Court on three motions by defendants Essex County ("the County"); Essex County Prosecutor's Office and two of its employees ("the ECPO defendants"); and the City of Newark ("the City"). Both the County and the ECPO defendants have moved for reconsideration of the Court's opinion and order granting in part and denying in part their motions for summary judgment (DE 230, 231),[1] while the City has moved for leave to appeal from that opinion and order. For the reasons set forth below, I will **GRANT** the County's motion for reconsideration (DE 233); order supplemental

---

[1]    Certain citations from the record will be abbreviated as follows:

Op. = Opinion on defendants' summary judgment motions (DE 230)
Essex Mot. = Brief in support of Essex County's motion for reconsideration (DE 233-1)
ECPO Mot. = Brief in support of the ECPO defendants' motion for reconsideration (DE 235-1)
Newark Mot. = Brief in support of the City of Newark's motion for leave to appeal (DE 241-1)
Opp. to ECPO Mot. = Roberts's brief in opposition to Newark's motion for leave to appeal (DE 254)
Laurino Dep. = Deposition of Prosecutor Robert Laurino (Ex. 14 to DE 218)

briefing on the ECPO defendants' motion for reconsideration (DE 235); and **DENY** the City's motion for leave to appeal and for a stay (DE 241).

## I. Background

A detailed factual background can be found in my most recent opinion in this matter (DE 230, hereinafter referred to as "the Opinion"). In 2014, Roberts was released from civil confinement after DNA evidence exonerated him from the 1996 rape and kidnapping of Sheronda Atwell. Following his release, Roberts commenced this lawsuit against various state actors and entities, alleging violations of 42 U.S.C. § 1983 and New Jersey law.

In August and November 2016, several defendants and claims were dismissed from the case as a result of successful motions to dismiss. (DE 64, 92.) The opinions and orders on those motions left intact Roberts's claims against the City and one of its employees, Detective Derrick Eutsey, as well as Roberts's claims against the ECPO defendants and the County.

The claims against Eutsey center on his role in the 1996 investigation of the Atwell rape and kidnapping. Roberts pled guilty to the kidnapping, but was later civilly detained based on the alleged rape. Roberts alleges that Eutsey falsely stated that Atwell had identified Roberts as her assailant from a photo array. The claims against the other defendants relate to Atwell's rape kit, which Roberts sought to have tested for DNA evidence in 2005. At that time, Roberts had served his prison sentence for the kidnapping charge to which he pled guilty, but remained in involuntary civil confinement as a result of having been designated a sexually violent offender. He had recently learned that a rape kit had been taken from Atwell but never analyzed, and thus he sought testing in order to hopefully overturn his conviction and secure his release from civil confinement.

Although Roberts did not know it at the time, the vaginal swabs from the rape kit were stored separately and thus were not analyzed in 2005 along with the rest of the kit. The swabs were not actually located and tested until 2013, resulting in Roberts's continued civil confinement until then. Roberts faults the City for its poor evidence storage practices, which prevented anyone from

2

finding the swabs for nearly a decade. He also blames the ECPO employees who facilitated the testing in 2005 for failing to inform him that the vaginal swabs were missing from the kit.

In December 2022, the Court ruled on three separate motions for summary judgment by the various defendants. The Opinion and order denied the summary judgment motion of the County, while granting in part and denying in part the motion of the ECPO defendants and the motion of the City and Detective Eutsey. Shortly thereafter, the ECPO defendants and the County filed their respective motions for reconsideration. (DE 233, 235.) Eutsey then filed a notice of appeal as of right (DE 236), and the City subsequently filed its motion for leave to appeal.

## II.    Motions for reconsideration

I begin with the motions for reconsideration. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995)).

In this district, motions for reconsideration are governed by Local Civil Rule 7.1(i). That rule provides that a party may move for reconsideration within 14 days of an entry of order or judgment on the original motion. See L. Civ. R. 7.1(i). It also requires that a party file a brief with their motion for reconsideration "setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." See *id.*

3

"The word 'overlooked' is the operative term in the Rule." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citing Allyn Z. Lite, New Jersey Federal Practice Rules 30 (2001)). "A motion that merely raises a disagreement with the Court's initial decision is not an appropriate reconsideration motion, but should be dealt with in the normal appellate process." *Church & Dwight Co. v. Abbott Lab'ys*, 545 F. Supp. 2d 447, 450 (D.N.J. 2008). That said, reconsideration is discretionary, and the Court will not knowingly persist in an error.

The reconsideration motions filed by the County and the ECPO defendants relate to the alleged negligence of Prosecutor Robert Laurino in facilitating the DNA testing of Atwell's rape kit in 2005. In short, although the lab that conducted the analysis reached out to Laurino several times to say that the vaginal swabs were missing from the kit, Laurino failed to pass along that critical information to Roberts's attorney. Roberts was thus led to believe that the testing had yielded inconclusive results because the rape kit materials had degraded over time. (Op. 32.) Only in 2013, after he had been denied post-conviction relief several times, did Roberts learn that the vaginal swabs from the rape kit were missing and had not been tested at all. The Opinion thus determined that there was sufficient evidence in the record for a reasonable jury to find that Laurino was negligent in conveying to Roberts the results of the 2005 DNA analysis. (*Id.*)

The defendants do not seek reconsideration of that specific ruling, but rather some related ones. The County seeks reconsideration of the Court's ruling that the County may be held vicariously liable for Laurino's negligence, while the ECPO defendants seek reconsideration of the Court's ruling that Laurino is not entitled to qualified immunity on the negligence claim. I will address these arguments in turn.

### A. Vicarious liability of the County

The New Jersey Tort Claims Act ("TCA") provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same

4

extent as a private individual under like circumstances." N.J. Rev. Stat. § 59:2-2. The TCA defines a "public entity" as including "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J. Rev. Stat. § 59:1-3. Relying on these sections, the Opinion determined that the ECPO may be held vicariously liable for Laurino's negligence because he was acting within the scope of his employment when he facilitated the testing of Atwell's rape kit in 2005. (Op. 46.)

The question of whether the County may also be held vicariously liable for Laurino's negligence was, as the Opinion recognized, trickier in light of the "dual or hybrid" status of county prosecutors in New Jersey. *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996). Like most distinctions, it is clearest at the extremes. On the one hand, "[i]t is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State." *Coleman*, *supra*. "On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." *Id.* Thus, as the New Jersey Supreme Court has explained, a county cannot be held vicariously liable for the actions of a county prosecutor "related to the investigation and enforcement of the criminal laws of the State," because a prosecutor in that context is acting as a State, not County, functionary. *Wright v. State*, 169 N.J. 422, 452 (2001). The Court has further instructed "that the test for determining in which capacity a county prosecutor acts should 'focus on whether the function that the county prosecutors and their subordinates were performing during the alleged wrongdoing is a function that traditionally has been understood to be a State function and subject to State supervision in its execution.'" *Gramiccioni v. Dep't of L. & Pub. Safety*, 243 N.J. 293, 312 (2020) (quoting *Wright*, *supra*, at 454).

Applying this test to the circumstances at issue, the Opinion concluded that Laurino was not acting in a law enforcement capacity on behalf of the State when he facilitated the testing of Atwell's rape kit. The Opinion's reasoning was as follows:

> Laurino testified at his deposition that in agreeing to assist Roberts in obtaining a DNA test, he did not investigate Roberts's criminal case. (Laurino Dep. 154:4-15.) Laurino explained that the prosecution in the case "had been completed" and "it was not reopened." (*Id.*) The case was in a sense reopened when Roberts sought post-conviction relief in 2007, but that occurred after Laurino assisted with the DNA testing, and Laurino was not involved in the eventual PCR prosecution. This evidence suggests that Laurino was not investigating or enforcing New Jersey's criminal laws when he assisted with the requested testing in an allegedly negligent manner. *Wright*, 169 N.J. at 452.

> Nor was Laurino acting pursuant to the post-conviction DNA testing statute. As discussed above, the statute in 2005 did not apply to individuals in civil confinement. Laurino was therefore under no State statutory obligation to assist Roberts with the testing he requested.

> The record also suggests that the State did not supervise ECPO's facilitation of DNA testing in any manner. Laurino testified that in 2004 and 2005, the New Jersey Attorney General's Office did not oversee ECPO's policy or practice regarding arranging for DNA testing, nor did anyone from the Attorney General's Office supervise ECPO's practice of arranging for such testing. (Laurino Dep. 71:18-22, 75:8-11.) With regard to the Roberts matter specifically, Laurino testified that no one from the Attorney General's Office had any role or say in his decision to agree to [Roberts]'s request for assistance. (Laurino Dep. 149:1-9, 150:5-10.) Laurino explained that "it's not the kind of thing that [the Attorney General's Office] would be involved in." (*Id.*)

> In light of this evidence, a reasonable jury could find that Laurino's allegedly negligent conduct was not "a part or an aspect of prosecutorial performance over which the State would exercise supervision." *See Gramiccioni*, 243 N.J. at 314. Accordingly, Essex County may be held vicariously liable for the conduct at issue.

6

(Op. 47-48.)

The County argues that in reaching this conclusion, the Court construed the law enforcement function of prosecutors too narrowly. According to the County, the law enforcement function encompasses more than arrests, prosecutions, and the investigation of criminal cases. (Essex Mot. 3-4.) Moreover, Laurino's allegedly negligent conduct is nothing like the conduct that courts have found counties vicariously liable for, all of which relate to the internal operations of the prosecutor's office. (*Id.* at 5.) *See, e.g.*, *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996) (dispute involving the denial of a promotion); *DeLisa v. County of Bergen,* 326 N.J. Super. 32 (App.Div.1999), *rev'd on other grounds,* 165 N.J. 140 (2000) (involving a retaliatory discharge claim).

The County also points out that the Attorney General's supervision over prosecutor's offices is not expected to function at the granular level. (Essex Mot. 2-3.) As the Third Circuit recently observed, there is "no unified chain of command, and [the Attorney General] is not responsible for day-to-day functioning." (*Id.* at 6.) *See Clark v. Governor of New Jersey*, 53 F.4th 769, 781 (3d Cir. 2022). The County thus argues that the State may be held vicariously liable for a prosecutor's misconduct even where the State does not directly supervise the type of conduct at issue.

The County's points are well-taken. Although Laurino was not, in a strict sense, enforcing the criminal laws of the State when he assisted Roberts in obtaining DNA testing of the rape kit, his actions were connected with the prosecutor's law enforcement function; he was facilitating the testing of evidence from a criminal case. While the case at that point was closed, Laurino knew that Roberts sought the testing in order to reopen the case and obtain post-conviction relief. Laurino's testimony suggests that he agreed to help Roberts in order to expedite what he assumed was to come: a challenge to the validity of Roberts' criminal conviction. (Laurino Dep. 36:3-12) (discussing his

practice of working with defense counsel to "amicably arrange DNA testing" in order to "advance a case").

In addition, Laurino's conduct fell well outside the classic internal operations of the prosecutor's office, such as its hiring processes, payroll administration, or the maintenance of its physical facilities. To the contrary, Laurino's conduct involved the office's *external* relations with a former criminal defendant. And while Laurino testified that the Attorney General's office did not oversee or supervise his DNA testing practices, the New Jersey Supreme Court has explained that, in assessing whether it is the State or the county that is vicariously liable for the actions of county prosecutors, it is not adequate to consider only "the degree of control" that either entity exercises "over the means by which the task is accomplished." *Wright*, 169 N.J. at 450. The nature of the function must be analyzed. It follows that the State's lack of day-to-day supervision over Laurino, while relevant, does not suffice to resolve the issue.

Accordingly, upon further consideration, I conclude that Laurino was acting on behalf of the State, rather than the County, when he allegedly misrepresented the scope of the DNA testing to Roberts.[2] I will therefore grant the County's motion for reconsideration. If there is to be derivative liability, the entity liable for Laurino's actions would be the State, not the County. Count 14 will therefore be dismissed as against the County.

### B. Qualified immunity of Laurino

As mentioned, the ECPO defendants' motion concerns Laurino's entitlement to qualified immunity on the negligence claim. The Opinion did not address the merits of this issue because the defendants raised it only in their reply brief and Roberts did not have a meaningful opportunity to respond. (Op. 43 n.16.)

The ECPO defendants object that Roberts did, in effect, have the opportunity to respond. They point to their opening brief, which argued that Laurino was entitled to *federal* qualified immunity on the § 1983 procedural

---

[2]    For what it is worth, the State has not registered any disagreement.

due process claim. In defendants' view, the § 1983 claim and the state law negligence claim were based on the same conduct, and the same legal standards govern the qualified immunity analysis under federal and state law. (ECPO Mot. 6-8.) Roberts, for his part, disputes that the same standards apply to federal and state law qualified immunity. (Opp. to ECPO Mot. 7-8.)[3]

I will exercise my usual strong preference, consistent with the policy of the Federal Rules, that issues be decided on the merits. I cannot grant reconsideration outright, but I will grant the ECPO defendants' alternative request that the Court order full briefing on the issue. Following supplemental briefing, I will consider the ECPO defendants' motion for reconsideration on the issue of state law qualified immunity.

### III.   Motion for leave to appeal an interlocutory order

I turn to the City's motion for leave to appeal the summary judgment opinion and order. In general, a litigant may not appeal a denial of summary judgment, because such a decision is not final within the meaning of 28 U.S.C. § 1291. *In re City of Philadelphia Litig.*, 49 F.3d 945, 956 (3d Cir. 1995) (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1245 (3d Cir. 1994)). However, 28 U.S.C. § 1292(b) provides for the immediate appeal of interlocutory decisions of the district court in "exceptional cases." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (citations omitted).

"The statute imposes three criteria for the district court's exercise of discretion to grant a § 1292(b) certificate. The order must (1) involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as to its correctness, and (3) if appealed immediately 'materially advance the ultimate termination of the litigation.'" *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (quoting 28 U.S.C. § 1292(b)). "The burden is

---

[3]   Roberts also argues that the ECPO defendants' reconsideration motion is untimely. The Court issued its summary judgment opinion and order on December 30, 2022. The ECPO defendants filed their motion on January 17, 2023—four days after the 14-day deadline had expired. (DE 231, 235.) Given that the delay was slight and the prejudice nonexistent, I will not deny the motion on this basis alone.

on the movant to demonstrate that all three requirements are met." *Litgo New Jersey, Inc. v. Martin*, No. CIV. 06-2891 AET, 2011 WL 1134676, at *2 (D.N.J. Mar. 25, 2011). Even if the movant satisfies this burden, the Court retains discretion to deny certification for interlocutory appeal. *Y.W. v. Roberts*, No. CV 2:14-01642, 2018 WL 5784995, at *4 (D.N.J. Nov. 5, 2018). *See Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) ("The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present.")

Certification should rarely be granted, as it "deviates from the strong policy against piecemeal litigation." *Id.* (Quoting *Huber v. Howmedica Osteonics Corp.*, No. 07–2400, 2009 WL 2998160, at *1 (D.N.J. Mar. 10, 2009)). In evaluating the § 1292(b) factors, "'the court must remember that ... [a] motion should not be granted merely because a party disagrees with the ruling of the district judge.'" *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996) (quoting *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 282 (E.D. Pa.1983)). "Rather, the 'difference of opinion' must arise out of genuine doubt as to the correct legal standard." *Kapossy*, *supra*.

The City seeks to certify five questions for interlocutory appeal.[4] Four pertain to the § 1983 *Monell* claim against the City, while the fifth pertains to the claim for vicarious liability. (Newark Mot. 1-2.) The City also asks the Court to stay the action pending its own appeal and Detective Eutsey's appeal as of right. (*Id.* at 19-24.) I will address the *Monell*-related questions first, followed by the question pertaining to vicarious liability. Finally, I will address the request for a stay.

### A.    *Monell*

*Monell* liability attaches where a city's official policy, practice or custom results in the deprivation of a constitutional right. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The Opinion denied the

---

[4]    The City's brief lists six questions, but questions three and four are exact duplicates (other than the additional word "of" in the fifth line of the fourth question). (Newark Mot. 1.)

City's motion for summary judgment as to Roberts's *Monell* claim on the ground that a reasonable jury could find that the Newark Police Department maintained a practice of storing positive-test swabs from a rape kit in a separate location from the rest of the kit, but without making that policy generally known, thus inhibiting Roberts's access to exculpatory evidence and depriving him of procedural due process. (Op. 28.)

The City seeks to certify the following questions related to this claim:

1. "Whether the practice of a few chemists in the police evidence lab can amount to a custom of the entire City police department for purposes of a *Monell* claim" under § 1983;

2. "Whether the unconstitutional custom, supporting the § 1983 *Monell* claim against the City, can be the separate storage of essential rape kit contents in police laboratory, rather than the failure to communicate that practice to other officers and personnel responsible for handling rape kit evidence";

3. "Whether one instance of a Chemist's failure to disclose a practice as to storage of rape kit contents, amounts to a custom or pattern of unconstitutional activity, under a § 1983 *Monell* claim, where there is no evidence of any other failures of communication or instances where other criminal defendants have been adversely affected by any such failures of communication";

4. "Whether one instance of a failure to disclose a practice as to storage of rape kit contents, can support a *Monell* claim, under § 1983, in the absence of any evidence of deliberate indifference on the part of the City."

(Newark Mot. 1-2.)

I begin by considering whether these questions are "controlling question[s] of law." *See* 28 U.S.C. § 1292(b). "A question is controlling if an incorrect disposition would constitute reversible error and . . . it is serious to the conduct of the litigation, either practically or legal[ly].'" *Valeant Pharms.*

*Int'l, Inc. v. AIG Ins. Co. of Canada*, No. CV18493MASRLS, 2023 WL 113959, at *3 (D.N.J. Jan. 5, 2023) (quoting *Kaplan v. Saint Peter's Healthcare Sys.*, No. CIV.A. 13-2941 MAS, 2014 WL 4678059, at *2 (D.N.J. Sept. 19, 2014)). Still, "[c]ourts in this district have held that . . . questions about a district court's application of facts of the case to established legal standards are not controlling questions of law for purposes of section 1292(b)." *Juice Ent., LLC v. Live Nation Ent., Inc.,* 353 F. Supp. 3d 309, 312–13 (D.N.J. 2018) (Quoting *Morgan v. Ford Motor Co.*, No. CIV.A. 06-1080, 2007 WL 269806, at *2 (D.N.J. Jan. 25, 2007)). *See also In re Barsan Contractors*, No. 04-12362, 2010 WL 3907116, at *5 (D.N.J. Sept. 30, 2010) ("Misapplication of the law to the facts is not a question of law").

At the outset, I note that questions one, two and four are marred by misguided "advocacy" in formulating the issue for appeal. The Opinion did not hold that only "a few chemists in the police evidence lab" maintained a practice of storing positive swabs separately from the rest of the kit (question one), or that there was merely "one instance of a Chemist's failure to disclose" this practice and "no evidence of any other failures of communication" (questions three and four). Instead, I noted that there was evidence that the chemist handling the Atwell rape kit was advised by his superiors to store positive swabs separately (suggesting that this was a sanctioned policy and not merely the idiosyncratic practice of a few chemists), and I noted that there was evidence that officials outside of the Newark lab, including individuals at the prosecutor's office who worked closely with the lab, were not made aware of this practice (suggesting that the failure to communicate the fact of separate storage was systematic and widespread). (Op. 27-28.) The City disagrees, but a party cannot obtain leave to file an interlocutory appeal by positing new or different facts under which it might prevail.

At any rate, questions one and three take issue, not with the Court's articulation of the established standards for *Monell* liability, but with its application of that standard to the facts, and in that sense do not present

"controlling questions of law." Essentially, the City challenges the sufficiency of the evidence to support the *Monell* claim, positing that "a few chemists in the police evidence lab" maintained this practice of storing rape kit contents separately, and that there was only "one instance of a Chemist's failure to disclose" that practice. These questions are very far from being purely legal, and an interlocutory appeal is not a prudent exercise of discretion.

Those factual matters aside, question four does appear to ask whether evidence of deliberate indifference is necessary for *Monell* liability to attach in context of this case. That could potentially qualify as a controlling question of law, but the City has not shown that there is "substantial ground for difference of opinion," as required by the second § 1292(b) factor.

"Substantial ground for difference of opinion lies where 'there is genuine doubt or conflicting precedent as to the correct legal standard.'" *Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, No. CV18493MASRLS, 2023 WL 113959, at *3 (D.N.J. Jan. 5, 2023) (quoting *Korrow v. Aaron's, Inc.*, No. 10-6317, 2016 WL 4083219, at *2 (D.N.J. July 29, 2016)). Here, Third Circuit precedent is clear that a showing of deliberate indifference is only necessary where the *Monell* claim is based on a failure or inadequacy of the municipality. A recent Third Circuit decision is instructive in this regard:

> [A] § 1983 claim against a municipality may proceed in two ways. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019). A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, *id.* at 798 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), or that they were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," *see id.* (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers. *Id.* at 798–99 ("[Plaintiff] has not pled a municipal policy ... [but] has ... adequately pled that the City failed to train, supervise, and discipline its police officers.").

13

> Plaintiffs that proceed under a municipal policy or custom theory must make showings that are not required of those who proceed under a failure or inadequacy theory, and vice versa. Notably, an unconstitutional municipal policy or custom is necessary for the former theory, but not for the latter, failure or inadequacy theory. *Id.* at 798 ("[F]or failure-to-train claims ...[,] a plaintiff need not allege an unconstitutional policy.") (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). . . . On the other hand, one whose claim is predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality. *See id.* . . .
>
> Although we have acknowledged the close relationship between policy-and-custom claims and failure-or-inadequacy claims, *Barkes v. First Corr. Med.*, 766 F.3d 307, 316–17 (3d Cir. 2014), the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected.

*Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019).

Roberts is the master of his claims, and his *Monell* claim appears to be based on the City's allegedly faulty evidence storage policy; it is not based on a failure to adequately train, supervise or discipline employees as such. Consequently, as explained by the Third Circuit in *Forrest,* Roberts is not required to show deliberate indifference.

Many of the decisions cited by the City in its brief are not on point, as they involve cases where the theory underlying *Monell* liability was a municipality's failure to adhere to unrelated policies. *See, e.g., Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 282 (3d Cir. 2006) (*Monell* claim was based on police officers' failure to adhere to municipality's policy); *Jewell v. Ridley Twp.*, 497 F. App'x 182, 185 (3d Cir. 2012) (*Monell* claim was based on municipality's failure to train its officers on police pursuits).

*Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015), cited and discussed in the Opinion, at least involved a similar evidence mismanagement claim. But *Newton* did not hold, as the City argues, that the plaintiff was required to show deliberate indifference. (Newark Mot. 15.) Rather, the Second Circuit concluded that it did not need to decide that issue, as the jury had actually found that the City acted either with intent or recklessness. *Id.* at 157, n.18. Furthermore, *Newton* is an out-of-circuit case decided four years prior to *Forrest*, in which the Third Circuit held unequivocally that a showing of deliberate indifference is *not* necessary to the extent *Monell* liability is premised on a faulty policy, and not failure to train. In light of the clear precedent of this Circuit, question four does not present "substantial ground for difference of opinion."

That leaves question two, which asks "[w]hether the unconstitutional custom, supporting the § 1983 *Monell* claim against the City, can be the separate storage of essential rape kit contents in police laboratory, rather than the failure to communicate that practice to other officers and personnel responsible for handling rape kit evidence." I am not entirely sure what this question is getting at, but it, like questions one and three, relates to the Court's application of law to the facts of the case and therefore does not present a "controlling question of law." In addition, the City does not point to any authority indicating a "substantial ground for difference of opinion" as to this question.[5]

It is not strictly necessary to address the final § 1292(b) factor—whether immediate appeal would materially advance the litigation—as the City has not shown that the first two factors are met with respect to questions one, two, three, and four. I do observe that most of the underlying issues and facts are likely to be tried in any event, and, should individual liability be found, the

---

[5]     The City does not make an argument as to this question specifically, but rather, argues generally that "[t]here is substantial ground [for] difference of opinion as to the denial of the City's defenses under *Monell*." (Newark Mot. 10.) In so doing, the City has not satisfied its burden under § 1292(b) with respect to question two.

issue of whether such liability should have extended to the City will be subject to correction on appeal. The time occupied in an interlocutory appeal will delay, not advance, the progress of litigation.

Accordingly, I decline to exercise my discretion to certify these questions for interlocutory appeal.

### B.    Vicarious liability

As discussed in Part II.A, *supra*, the TCA holds public entities vicariously liable for torts committed by their employees within the scope of employment. N.J. Rev. Stat. § 59:2-2. The TCA provides, however, that "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the employee is not liable." N.J. Stat. Ann. § 59:2-2(b). Thus, where an employee is entitled to qualified immunity under the TCA, the public entity employer is also immune from liability. The TCA grants immunity to a public employee for actions taken "in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3.

In its summary judgment briefing, the City argued that it could not be held vicariously liable for the negligent conduct of its employees because those employees were immune from Roberts's negligence claim under the TCA. (Newark MSJ 40.) The City failed to satisfy its burden, however, to establish the premise of its argument, *i.e.,* that its employees entitled to qualified immunity. I therefore denied summary judgment as to the claim against the City for vicarious liability. (Op. 30.)

Now, the City seeks to certify the following question related to the vicarious liability claim:

> Whether the City is entitled to good faith immunity or immunity for failure to enforce the law, under the New Jersey Tort Claims Act ("TCA"), for a Chemist's errant execution of (or failure to enforce) the law, in failing to advise officers that certain contents of a rape kit has been preserved separately

(Newark Mot. 2.)

16

Certification of this question is not warranted, as it seeks review of an issue that the Court did not reach. My only determination with respect to the vicarious liability claim was that the City did not establish the entitlement of its employees to good faith immunity under the TCA. The City did not argue in its summary judgment briefing that the chemist handling the Atwood rape kit acted in good faith in "failing to advise officers that certain contents of the rape kit had been preserved separately." I therefore did not consider that issue, which would in any event appear to present a factual dispute for trial. Instead, based on the issues as presented, I concluded that the City failed to meet its burden of establishing the good faith immunity of its employees.

This Court "cannot ask the Third Circuit to issue speculative, advisory opinions on questions the Court did not answer in its original opinion." *In re Cent. Eur. Distribution Corp. Sec. Litig.*, No. CIV.A. 11-6247 JBS, 2012 WL 5511711, at *5 (D.N.J. Nov. 14, 2012). *See Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 862 (3d Cir. 1977) ("In the absence of a definitive order . . . by the district court, the inquiry is essentially a request for an advisory opinion, which we may not honor.") Accordingly, I will decline to exercise my discretion to certify this question for interlocutory appeal.

### C. Request for a stay

The City has requested that the Court stay further proceedings pending its prospective appeal and that of Detective Eutsey. Given that I am not certifying any of the City's questions for appeal, I will address this argument only as it relates to Eutsey's appeal as of right.

Courts analyze the following four factors in addressing request for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

Eutsey has appealed the Court's ruling that he is not entitled to qualified immunity as to the claims asserted against him. (DE 236.) Those claims are § 1983 fabrication of evidence, § 1983 malicious prosecution, parallel state law claims, and a state law negligence claim.

The Opinion concluded that, with respect to § 1983 immunity, the law was "clearly established" as of 1996 when Eutsey allegedly fabricated evidence and maliciously prosecuted Roberts. (Op. 25.) *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") As to state law immunity under the TCA, the Opinion determined that Eutsey had not met his burden to demonstrate his entitlement to good faith immunity, as he incorrectly argued that it was Roberts's burden to prove that he did not act in good faith. (Op. 26.) *See Marley v. Borough of Palmyra*, 473 A.2d 554, 566 (Law. Div. 1983) ("[a]n employee claiming immunity under N.J.S.A. 59:3–3 must prove 'good faith'") (abrogated on other grounds).

The prohibition on fabrication of evidence is and was always clear; should it be proven that Eutsey falsely stated that the victim had identified Roberts in a photo array, that would violate well-established standards. Despite requesting a stay pending Eutsey's appeal, the City did not argue, much less make a "strong showing," that Eutsey is likely to succeed on the merits of his interlocutory appeal. In the absence of such a showing, I will deny the request for a stay.

## IV.   Conclusion

For the reasons set forth above, the County's motion for reconsideration (DE 233) is **GRANTED** and the City's motion for leave to appeal the summary judgment opinion and order is **DENIED** (DE 241). Supplemental briefing is ordered on the ECPO defendants' motion for reconsideration (DE 235). The plaintiff and the ECPO defendants may each file a brief, no longer than 5 pages, limited solely to the issue of whether qualified immunity bars the

negligence claim against defendant Laurino. The City's motion for a stay is **DENIED**. An appropriate order will issue.

Dated: April 17, 2023

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**