UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**RODNEY R. ROBERTS,**

                **Plaintiff,**

     v.

**COUNTY OF ESSEX, et al.,**

                **Defendants.**

Civ. No. 15-7061 (KM) (JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the Court on supplemental briefing of a reconsideration motion filed by defendants Essex County Prosecutors Office ("ECPO") and former Assistant Prosecutor Robert Laurino (together, the "ECPO defendants"). (DE 235.)[1] [2] In December 2022, the Court granted in part and denied in part a motion for summary judgment filed by the ECPO defendants, leaving intact a negligence claim against Laurino and a claim that the ECPO is vicariously liable for Laurino's alleged negligence. (DE 230, 231.) The ECPO defendants subsequently sought reconsideration of those rulings on the ground that Laurino is entitled to qualified immunity under the New Jersey Tort Claims Act ("NJTCA"). Although the ECPO defendants had raised this argument in their summary judgment reply brief, I declined to address the merits, as

---

[1]     Certain citations to the record will be abbreviated as follows:

    DE = docket entry in this matter

    ECPO Br. = ECPO defendants' supplemental brief in support of their reconsideration motion (DE 259)

[2]     The motion was also filed by defendant Michelle Bolan, who was an ECPO investigator involved in the case. The claims against Bolan were dismissed on summary judgment.

1

Roberts had not had a meaningful opportunity to respond. (DE 230 at 43, n.16.) On reconsideration, I granted the ECPO defendants' request to submit supplemental briefing on the merits of Laurino's claimed entitlement to state law qualified immunity. (DE 255 at 9, DE 256.)

The negligence claim against Laurino rests on his involvement in facilitating the DNA testing of a rape kit in 2005. At the time, Roberts was civilly confined as a result of having been deemed a sexually violent offender. His status was predicated on his 1996 arrest for the rape and kidnapping of Sheronda Atwell and his eventual plea of guilty to the kidnapping charge (but not the rape charge), for which he served a prison term of seven years. In late 2004, during the course of Roberts's civil commitment proceedings, he learned that a rape kit had been taken from Atwell in 1996 but never analyzed. He sought DNA testing of the rape kit in the hope of overturning his conviction and securing his release from civil confinement.

Defendant Laurino, who was then the director of the Sexual Assault Response Team at ECPO, facilitated the testing at Roberts's request. After arranging for the State lab to conduct the DNA analysis, Laurino informed Roberts that the results were inconclusive because the materials had degraded over time. The summary judgment record suggests, however, that the lab reached out to Laurino several times to say that the vaginal swab tips were missing from the kit. As Laurino did not share this critical piece of information with Roberts, Roberts was led to believe that the kit was tested in its entirety. Roberts was not released from civil confinement until 2014, after the missing swab tips were located and tested, revealing that his DNA profile did not match that of Atwell's assailant.

In denying the ECPO defendants' motion for summary judgment on the negligence claim, I concluded that Laurino owed a duty of care to Roberts to accurately represent the scope of the DNA testing that was conducted in 2005. (DE 230 at 41.) While Laurino had no obligation, statutory or otherwise, to personally facilitate the testing for Roberts, he agreed to do so on a voluntary basis and created the appearance that he *had* done so. It was reasonably

foreseeable that Roberts would rely on Laurino's representation that the results were inconclusive and would not think to consider whether any materials were missing from the kit. A reasonable jury could therefore find that Laurino breached a duty to exercise reasonable care under the circumstances. Thus far, I track the analysis of my December 2022 summary judgment opinion.

With the benefit of supplemental briefing, I now consider the argument of the ECPO defendants that Laurino is entitled to qualified good-faith immunity on the negligence claim. The defendants cite a provision of the NJTCA that immunizes public employees from liability for actions taken "in good faith in the execution or enforcement of any law." *See* N.J. Stat. Ann. § 59:3-3. In addition, the defendants note that under the NJTCA, the ECPO cannot be held vicariously liable for Laurino's alleged negligence where Laurino himself is immune from liability. *See* N.J. Stat. Ann. § 59:2-2(b)) ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.).

Good faith immunity under § 59:3-3 "applies to acts constituting enforcement of the law." *Bombace v. City of Newark*, 125 N.J. 361, 368 (1991). Decisions of the New Jersey Supreme Court and the Appellate Division make it clear that § 59:3-3 is only available to a public employee where that employee is acting in the course of enforcing a particular statute, ordinance, or regulation. *See, e.g. Gonzalez by Gonzalez v. City of Jersey City*, 247 N.J. 551, 579 (2021) (officers who left a motorist involved in a one-vehicle accident on a highway bridge after the motorist refused a ride were not entitled to immunity for good faith enforcement of the law because there was "no applicable law to enforce"); *Caicedo v. Caicedo*, 439 N.J. Super. 615, 626 (App. Div. 2015) (officer who hit a bicyclist with a police vehicle while transporting a prisoner to a precinct in a non-emergency situation was not entitled to good faith immunity because he was not acting in the "execution or enforcement of any law"); *Frields v. St. Joseph's Hosp. & Med. Ctr.,* 305 N.J. Super. 244, 249 n.1 (App. Div. 1997) (emergency medical technician personnel were not entitled to good

faith immunity in responding to a 9-1-1 call where the City "cited no law which City personnel were administering or enforcing at the time of their response").

In this case, the summary judgment record would not support a finding that Laurino was executing or enforcing any law when he facilitated the testing of Atwell's rape kit. As I explained in the summary judgment opinion, Roberts's criminal case was closed by the time he requested testing, and he had already finished serving his criminal sentence. (DE 230 at 47.) While "[t]he case was in a sense reopened when Roberts sought post-conviction relief in 2007 . . . that occurred after Laurino assisted with the DNA testing, and Laurino was not involved in the eventual PCR prosecution." Thus, the evidence suggests that Laurino was not investigating or enforcing New Jersey's criminal laws when he assisted with the requested testing in an allegedly negligent manner.

Nor was Laurino acting pursuant to New Jersey's post-conviction DNA testing statute. In 2005, that statute applied only to an individual "who was convicted of a crime and is currently serving a term of imprisonment." N.J. Stat. § 2A:84A-32a (2001). As Roberts had completed his prison term and was then in *civil* confinement, he had no statutory right to have the State facilitate DNA testing of the evidence in his criminal case.

The ECPO defendants rely on my conclusion on reconsideration that Laurino's actions "were connected with the prosecutor's law enforcement function" because he was "facilitating the testing of evidence from a criminal case" in order to "expedite what he assumed was to come: a challenge to the validity of Roberts' criminal conviction." (DE 255 at 7.) That conclusion pertains to the issue of whether Laurino was acting on behalf of the State, as opposed to Essex County, when he facilitated the testing. As I noted in the summary judgment opinion, "county prosecutors in New Jersey possess a 'dual or hybrid' status in that they serve both the county and the State. *See Wright*, [*v. State*, 169 N.J. 422, 455 (2001)]; *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996)." (DE 230 at 46.) A county cannot be held vicariously liable for the actions of a county prosecutor "related to the investigation and enforcement of the criminal laws of the State," because a prosecutor in that context is acting

4

as a State, not county, functionary. *Wright, supra* at 452. By contrast, "when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." *Coleman, supra.*

On summary judgment, I initially determined that Laurino was not acting in a law enforcement capacity when he facilitated the DNA testing of the Atwell rape kit and therefore that he was not acting on behalf of the State. (DE 230 at 48.) On reconsideration, however, I observed that "[a]lthough Laurino was not, in a strict sense, enforcing the criminal laws of the State when he assisted Roberts in obtaining DNA testing of the rape kit, his actions were connected with the prosecutor's law enforcement function." (DE 255 at 7.) I also noted that "Laurino's conduct fell well outside the classic internal operations of the [County] prosecutor's office, such as its hiring processes, payroll administration, or the maintenance of its physical facilities." (*Id.* at 8.) I concluded that "[i]f there is to be derivative liability, the entity liable for Laurino's actions would be the State, not the County." (*Id.*)

According to the ECPO defendants, this conclusion entails that Laurino was acting "in the execution or enforcement of any law" within the meaning of § 59:3-3, such that he is immune from liability so long as he acted in good faith. (ECPO Br. 3.) That goes too far. While Laurino's conduct in facilitating DNA testing of the Atwell rape kit was certainly *related* to the enforcement of the criminal laws, in the sense that he was performing a function of the kind that prosecutors tend to perform while working on a criminal case, he was not *in fact* enforcing the criminal laws at the time. This is a distinction with a difference; New Jersey courts have found that police officers performing functions that are undeniably related to law enforcement functions—such as transporting a prisoner to a police precinct in a non-emergency situation—are not "acting in the 'execution or enforcement of any law' so as to afford [them] immunity under N.J.S.A. § 59:3-3." *Caicedo*, 493 N.J. Super. at 626. And the

5

real upshot of my reasoning was that Laurino's actions were *not* in his capacity as a County employee, a different matter.

Because Laurino was not acting to implement or enforce any statute, regulation, or ordinance—he was, rather, accommodating Mr. Roberts by voluntarily utilizing resources available to him as a prosecutor—he is not entitled to good faith immunity under § 59:3-3. The ECPO defendants' motion for reconsideration of my summary judgment ruling on the negligence claim (DE 235) is therefore **DENIED**. An appropriate order will issue.

Dated: July 20, 2023

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**