UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X

RODNEY R. ROBERTS,                                    Hon Michael E. Farbiarz
                              Plaintiff,              Civil Action No. 15-cv-7061

              -against-

CITY OF NEWARK, DETECTIVE DERRICK            **FINAL PRETRIAL ORDER**
EUTSEY, ESSEX COUNTY PROSECUTOR'S
OFFICE, ASSISTANT PROSECUTOR ROBERT
D. LAURINO,
                              Defendants.

-------------------------------------------------------------------X

This matter having come before the Court for a pretrial conference pursuant to Fed. R. Civ. P 16; Mirel Fisch, Esq., having appeared for plaintiff, Gary Lipshutz, Esq., and Emilia Perez, Esq., having defendants City of Newark and Det. Derrick Eutsey, and Thai L. Nguyen having appeared for defendants Essex County Prosecutor's Office and Assistant Prosecutor Robert D. Laurino, and counsel all having been notified that:

(1) a jury trial in this matter has been scheduled before the Hon. Michael E. Farbiarz on a date set by the Court;

(2) the pretrial submissions detailed in ¶¶ 2 and 12 below are to be submitted no later than two weeks weeks prior to trial or they will be deemed waived; and

(3) a pretrial housekeeping conference is scheduled before Hon. Michael E. Farbiarz on a date to be determined;

the following Final Pretrial Order is hereby entered:

1.    **JURISDICTION (Set forth specifically)**

As to the malicious prosecution and due process fabricating/falsifying evidence claims against Defendant Det. Derrick Eutsey pursuant to 42 U.S.C. § 1983, this Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

As to the malicious prosecution and fabricating/falsifying evidence claims against Defendant Det. Derrick Eutsey pursuant to New Jersey law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

As to the procedural due process claim against Defendant City of Newark pursuant to 42 U.S.C. § 1983, this Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

1

#3931588

As to the respondeat superior/vicarious liability claim against Defendant City of Newark pursuant to New Jersey law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

As to the negligence claim against Defendant Robert D. Laurino pursuant to New Jersey law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

As to the respondeat superior/vicarious liability claim against the Essex County Prosecutor's Office pursuant to New Jersey law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

2.     **PENDING/CONTEMPLATED MOTIONS/TRIAL BRIEFS** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar. Also set forth the nature of the motion and the return date. If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position. Only those motions listed herein will be entertained prior to trial.)

**Plaintiff**

A. Motion to reinstate Count 6 in the Complaint—1st Amendment Access to the Courts, against Laurino, as Plaintiff's federal claims against Laurino were dismissed on summary judgment and therefore he no longer has another remedy to compensate him for the constitutional violation. Although this count was dismissed as essentially duplicative at the outset of this action, the facts are the same as those which were necessary to prove the other federal and state law claims against Laurino, therefore no additional discovery is necessary as to this Count and it is ready to be tried.

B. Motion for a negative/spoliation inference: Plaintiff will move for a negative/ spoliation inference that a photograph of Roberts which was allegedly signed by Atwell never existed, and that the case file was not produced because it would confirm that there is no evidence in that file of such a signed photograph ever existing.

C. Motion in limine: Plaintiff will move to preclude Defendants from referencing, or admitting into evidence, any references to Roberts's prior or subsequent bad acts, including all arrests and/or convictions other than the May 8, 1996 incident at issue in this case. Plaintiff will similarly seek to redact all such information from otherwise admissible exhibits.

D. Motion in limine: Plaintiff will move to preclude Newark from introducing at trial information that is additional, or contrary, to what was testified to by its unprepared 30(b)(6) deposition witnesses as to the following items identified in Plaintiff's Notice to Depose City of Newark Pursuant to Fed. R. Civ. P. 30(b)(6): 1, 3-4, 7-9, 12-15, 19-20, 24-30, 34, 40-41.

#3931588

E. Motion in limine: Plaintiff will move to preclude Newark from offering any evidence at trial that "No other person has alleged any injury or constitutional violation related to the separation of swabs and storage at the Newark Crime Lab" as no related evidence was adduced during the course of discovery.

F. Motion in limine: (given that Newark will seek to preclude testimony or reference to Mr. Lipshutz and Ms. Perez's search for the file and photograph in this case) Plaintiff will move to introduce the transcript of the October 17, 2017 status conference in this matter. If Newark opposes that, then Plaintiff will seek to call Mr. Lipshutz and Ms. Perez as witnesses to testify regarding their efforts in searching for the Roberts file and photograph.

G. Plaintiff will oppose any pre-trial/in-limine motions any defendant may make.

**Defendants City of Newark and Det. Eutsey**

1. Newark Defendants will oppose Plaintiff's Pretrial/In-Limine Motions, specifically, B, C, D, E, and F.

2. Newark Defendants will move in limine for an order barring any testimony or any reference to any search for the missing photograph by Mr. Lipshutz and/or Ms. Perez.

3. Newark Defendants will move in limine for an order directing that law of the case remains in effect.  More specifically, the Court granted summary "on Counts 4 and 11, but only insofar as they assert *Youngblood*-style federal or state law claims against Eutsey (or, derivatively, against the City of Newark) based on the failure to preserve the photos. I note that Counts 3 and 12 have been withdrawn by Roberts as against Eutsey."

**Defendants Essex County Prosecutor's Office and AP Laurino**

1. ECPO Defendants will oppose Plaintiff's Pretrial/In-Limine Motions, specifically, A and C; and, will oppose — to the extent ECPO Defendants may be implicated — Plaintiff's in-limine motion.

2. Unless agreed-upon by the parties, ECPO Defendants will move in limine for an order directing that law of the case/all prior orders and holdings in this matter remain in effect.  E.g., ECF 230, 255, 266.  More specifically, the following recitations/holdings:

"What is lacking is any evidence that either Laurino or Bolan was responsible for that omission or fabrication. See generally Whitlock v. Brueggemann, 682 F.3d 567, 580 (7th Cir. 2012) (liability for fabricating evidence requires that the evidence be "used to deprive the defendant of her liberty in some way").

3

I will therefore grant summary judgment on the fabrication of evidence claims and dismiss Counts 2 and 10 against Laurino and Bolan." (ECF 230, 35).

"Qualified immunity protects Laurino under these circumstances. See Dail, 2011 WL 283706 at *7 (qualified immunity shielded government defendants from procedural due process claim under Osborne because Osborne was decided after the alleged unconstitutional conduct occurred). Accordingly, I will grant summary judgment on the procedural due process claim and dismiss Count 5 against Laurino and Bolan." (ECF 230, 40)

"Count 7 alleges that Laurino is vicariously liable for the constitutional violations of his subordinate, Bolan. Because I am granting summary judgment as to Bolan on both of Roberts's constitutional claims against her, see Parts V.A and V.B, supra, I will also grant summary judgment to Laurino on the derivative claim against him for supervisory liability." (ECF 230, 40)

That Laurino's conduct does not amount to the violation of any statutory duty.

"[S]ummary judgment is granted as to Laurino on Counts 2, 5, 7, and 10" (ECF 230, 50).

"In sum, the following claims remain:
• Count 1 (§ 1983 malicious prosecution) against Eutsey
• Count 2 (§ 1983 fabrication of evidence) against Eutsey
• Count 5 (procedural due process) against the City of Newark
• Count 8 (state law malicious prosecution) against Eutsey
• Count 10 (state law fabrication of evidence) against Eutsey
• Count 13 (negligence) against Laurino and Eutsey
• Count 14 (vicarious liability) against ECPO, Essex County, and the City of Newark, as to the above counts."  (As modified by Order/Opinion ECF 255)

(ECF 230, 50).

3.    **STIPULATION OF FACTS (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties.)**

1.    Sheronda Atwell, then age 17, was raped on May 8, 1996, in Newark, NJ, at approximately 1 AM, by a black male who was unknown to her.

2.    It was dark and raining at the time, and the perpetrator approached her from behind.

3.    The perpetrator raped Ms. Atwell vaginally from behind, and he ejaculated in her.

4

#3931588

4.    The police were called to the scene, and a Newark Police Officer Hill interviewed Ms. Atwell. She described the perpetrator to the Police Officer as a male black, age 20, 5'7, and weighing 185 lbs.

5.    An ambulance was called, and Ms. Atwell was transported to the hospital where a rape kit was collected at approximately 3:00 AM. Police Officer Hill received it at approximately 3:50 AM that same night.

6.    The case was assigned Criminal Complaint No. 96-38542, and it was referred to the Newark Police Department's Sexual Assault Risk Analysis Unit. Det. Derrick Eutsey of the Newark Police Department's SARA unit was assigned the case.

7.    On May 14, 1996, Det. Eutsey picked up Ms. Atwell and her mother from their house and transported them to the SARA office.

8.    Det. Eutsey interviewed Ms. Atwell about the assault.

9.    Det. Eutsey also had Ms. Atwell sign a statement which he prepared.

10.   At some point, Det. Eutsey also prepared a Continuation Report pertaining to this case.

11.   While at the SARA office on May 14, 1996, Det. Eutsey had Ms. Atwell look through suspect photographs.

12.   The last page of the statement Det. Eutsey prepared, which he had Ms. Atwell sign, states that she identified a photograph of Plaintiff, Rodney Roberts, identified as Gallery No. 188-728, who was age 29 at the time.

13.   Roberts was previously arrested by the Newark Police Department on January 29, 1986, when he was 19 years old. On that date, a suspect photograph was taken of him which was identified as Gallery No. 188-728. Roberts was not arrested again by the Newark Police Department between January 29, 1986, and the date of Atwell's assault—May 8, 1996.

14.   On May 16, 1996, Det. Eutsey responded to the Newark Municipal Prosecutor's Office. He advised the Assistant Prosecutor of the assault on Ms. Atwell, and provided the Assistant Prosecutor with information consistent with the information contained in his Continuation Report.

15.   Based upon the information Det. Eutsey provided, the Assistant Prosecutor had him appear before a Judge Cruz of the Newark Municipal Court, and Det. Eutsey reiterated the information he had provided to the prosecutor.

#3931588

16. Based upon the information Det. Eutsey provided to Judge Cruz, two warrants were issued for Roberts's arrest—one for aggravated sexual assault in the first degree, and one for first degree kidnapping.

17. On May 29, 1996, the sex crimes kit was submitted to the Newark Police Forensic Laboratory. It was received by the Newark Lab's Chief Chemist, Annie Lanier, who assigned Crime Lab Number 28651 to it.

18. The sex crimes kit remained in a refrigerator within the Newark Lab until July 18, 1996, when Senior Forensic Chemist Joseph Groller examined the contents of the rape kit for serological evidence.

19. On July 18, 1996, Mr. Groller determined that the Atwell sex crimes kit was positive for seminal stains—specifically, that the two Q-tip vaginal swabs, the two Q-tip anal swabs, and gauze square genital swab were positive for seminal stains. He also observed the presence of saliva on the victim's saliva sample filter paper.

20. Mr. Groller cut the tips off the two Q-Tip vaginal swabs and placed them in a brown coin envelope, which he initialed "V.S." (vaginal swab) and wrote the Crime Lab Number, "28651" on it.

21. Mr. Groller cut the tips off the two Q-Tip anal swabs and placed them in a brown coin envelope, which he initialed "A.S." (anal swab) and wrote the Crime Lab Number, "28651" on it.

22. Mr. Groller placed the gauze in a brown coin envelope, which he initialed "G.S." (genital swab) and wrote the Crime Lab Number, "28651" on it.

23. Mr. Groller placed the filter paper in a brown coin envelope, which he labeled "SALIVA" and wrote the Crime Lab Number, "28651" on it.

24. Mr. Groller sealed all four brown coin envelopes, and placed them into one white envelope which he labeled with the Crime Lab Number ("LAB # 28651"), the Criminal Complaint Number ("CC # 38542-96"), the contents of the envelope ("V.S.(2) G.S. A.S.(2) SALIVA"), the victim's name ("Sheronda Atwell"), and when and from whom the material was received by the Crime Lab ("Rec'd 5/29/96 DET.WHITE").

25. Mr. Groller sealed the white envelope, and placed it in a shoe box sized box along with other white envelopes which contained positive samples from sex crimes kits—which were arranged numerically by the Crime Lab Number, in the freezer of one of the two locked refrigerator/freezers within the Crime Lab's serology section.

26. Only Crime Lab personnel had access to those two refrigerator/freezers within the Crime Lab's serology section.

#3931588

27.   Mr. Groller also repackaged and labeled the remainder of the sex crimes kit, and it was returned to the Newark Police Department Property and Evidence Room.

28.   On July 18, 1996, Mr. Groller also prepared a handwritten Serology Report detailing the findings of his examination of the sex crimes kit, as well as a Certificate of Analysis which was signed off on by Chief Chemist Lanier.

29.   On May 25, 1995, Roberts was arrested in East Orange on an unrelated theft charge. He plead guilty to that charge on June 12, 1996, but he was not released on bail pending sentencing because of the sexual assault and kidnapping charges he was facing for the Atwell assault.

30.   On June 26, 1996, Roberts was made aware of the pending sexual assault and kidnapping charges, and he was arraigned on those charges. Roberts plead not guilty.

31.   On July 16, 1996, Roberts was transported to the holding cell area in the Essex County Courthouse, and was to appear before the Hon. Eugene Codey, J.S.C. Assistant Deputy Public Defender Charles Martone was assigned to Judge Codey's courtroom that day to represent those individuals who did not have an attorney, and he approached Roberts in the holding cell area. Roberts had never met or spoken with Martone prior to that day.

32.   Martone informed Roberts that the prosecutor offered the following plea agreement related to the Atwell matter: In exchange for a guilty plea to Kidnapping in the Second Degree (downgraded from Kidnapping in the First Degree), the charge of Aggravated Sexual Assault in the First Degree would be dismissed, and the prosecutor would recommend that he be sentenced on the Kidnapping charge to seven years flat, to run concurrently with the three years he would be sentenced to for the theft charge and parole violation.

33.   Roberts advised Martone that he was innocent of the charges pertaining to the Atwell assault, however after some discussion, Roberts agreed to accept the prosecutor's plea agreement.

34.   Roberts plead guilty to Kidnapping in the Second Degree on July 16, 1996.

35.   On October 17, 1996, Roberts was sentenced to a flat 7 years imprisonment on the kidnapping charge, to run concurrent with three years on the theft charge, to run concurrent with the parole violation. Judge Codey advised Roberts that ultimately, the Parole Board would determine how much time he would spend in jail, but that the earliest release date would be one year, four months, and 18 days, although he would not be paroled the first time around.

36.   On October 30, 1996, while in the custody of the New Jersey Department of Corrections, the New Jersey State Parole Board revoked Roberts's parole and

#3931588

ordered him to serve a parole eligibility term of 28 months—commencing from his arrest on May 25, 1996.

37.    Roberts next appeared before the New Jersey State Parole Board for a parole release hearing on April 16, 1998. However, he was denied parole because of the allegation that he had forced a 17 year old girl into a secluded area and forced her to have sex with him, stating he would blow off her head if she did not comply.

38.    Roberts therefore filed a motion to amend his custodial sentence, which Judge Codey denied on May 17, 1999. On May 25, 2000, the New Jersey State Parole Board denied Roberts parole again based upon the alleged aggravated sexual assault, and established a twenty-seven month future eligibility term.

39.    Roberts appealed the Parole Board panel's May 25, 2000, determination. However, on November 29, 2000, the Parole Board affirmed the panel's determination, noting in part that "the Parole Board must rely on the information provided by the Department of Corrections. According to that information, you did force the victim to a secluded area and did force her to have sex with you. Although the Sexual Assault charge was dismissed as part of the plea agreement, the circumstances of the offense do not change."

40.    Accordingly, on January 8, 2001, Roberts filed a motion to withdraw his guilty plea. Judge Codey denied the motion on January 18, 2001, noting that "If you feel that the Parole Board improperly denied your request for parole that is what should be appealed."

41.    On October 23, 2001, August 8, 2002, and June 24, 2003, the New Jersey State Parole Board again denied Roberts parole based upon the same information, and Roberts appealed.

42.    On October 29, 2003, the Parole Board affirmed the panel's determination, noting in part that "based on information in your file and developed during the hearing, you continue to minimize your conduct and to lack insight into the causes of your criminal behavior," and that the Parole Board "must consider the information provided by the Department of Corrections. If you feel that you were improperly sentenced, you must address this matter to the sentencing court."

43.    Roberts again filed a motion before Judge Codey, this time seeking to correct the 1996 presentence report. However, on January 16, 2004, Judge Codey denied the motion, stating that the "Judgment of Conviction clearly reflects that you were sentenced on the Second Degree Kidnapping, and that the First [Degree] Aggravated Sexual Assault charge was dismissed. If you feel that the Parole Board improperly handled your case that is what should be appealed."

44.    Roberts maxed out his criminal sentence, and was scheduled to be released on June 1, 2004. However, he was referred to the State of New Jersey Attorney General's

8

#3931588

Office to determine whether he should be involuntarily committed as a sexually violent predator.

45.   On May 18, 2004, the Attorney General's Office filed a Petition for Civil Commitment under the New Jersey Sexually Violent Predator Act, based in large part upon the allegations and circumstances pertaining to the May 8, 1996 sexual assault on Atwell.

46.   The Petition was accompanied by Certifications of two Clinical Psychologists who had examined Roberts.

47.   Dr. Vasudev N. Makhija, MD, found, in part, that Roberts exhibits "denial/attitudes condoning offenses or distorted thinking" in that he

> . . . Deni[es] of any wrongdoing in 1996 offense that resulted in charges of Aggrav-sexual assault & kidnapping. In fact offered legal arguments concerning the fact that he was not convicted of sex offense in 1996. During prior psychological evaluations, he had offered rationalization of reasons to explain why he was not guilty. He portrayed himself as a victim of unfortunate circumstance of the system.

48.   Based upon the above, Dr. Makhija concluded that Roberts "suffers from a mental abnormality (as defined by the Act) or personality disorder that makes the person likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment."

49.   Dr. Donald ('Rusty') Reeves, MD found, in part, that Roberts possess the "[p]resence of deviant sexual fantasies/behaviors" in that ". . . Although [Roberts] was not convicted of a sex offense in 1996, and denies he committed the offense, I do not believe him. He did plead guilty to kidnapping which suggests he accepted culpability."

50.   Based upon the above, Dr. Reeves concluded that Roberts "suffers from a mental abnormality (as defined by the Act) or personality disorder that makes the person likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment."

51.   Assistant Deputy Public Defender John Douard was assigned to represent Roberts in opposition to the Civil Commitment proceedings.

52.   Douard argued that the circumstances surrounding the plea to kidnapping cannot be considered as a sexual offense to support the petition to involuntarily commit Roberts given that the sexual assault charge was dismissed.

#3931588

53.   At a probable cause hearing on May 26, 2004, the Court determined that it could be considered to determine whether Roberts should be temporarily committed, and on May 27, 2004, the Court granted the petition and issued an Order for Temporary Civil Commitment.

54.   Following the Order for Temporary Civil Commitment, a commitment hearing was held on September 9, 2004, and it was continued on December 9, 2004.

55.   On December 9, 2004, Dr. Luis Zeiguer, an expert called to testify on behalf of the State, testified that a rape kit was performed on Atwell.

56.   Dr. Zeiguer testified that it was examined by the Newark Police Department's Forensic Lab, and that the Chemist reported "a positive semen stain in the swabs from the vagina" and asked "for a sample from a suspect to compare it," however that there was no indication that was ever done.

57.   Following Dr. Zeiguer's testimony, Roberts asked Douard to arrange for a DNA comparison with his blood and the semen stains contained in Atwell's 1996 sex crimes kit.

58.   Douard spoke with Michael Marucci, the then-head of the Trial Division at the Office of the Public Defender in Essex County, who advised him to reach out to Essex County Assistant Prosecutor Robert D. Laurino for assistance in obtaining a DNA analysis.

59.   Douard wrote to Laurino on December 17, 2004, asking "for help in following the proper procedure for performing a DNA test."

60.   Douard gave Laurino the information pertaining to Roberts' charges, including his accusing number, and advised that a "sexual assault kit was performed on the alleged victim, but no DNA comparison was ever made . . . [Roberts] would now like the DNA test to be performed and a comparison made to a semen stain that should be preserved with the sexual assault kit. We would appreciate it if you could find out if the kit still exists, and, if so, proceed to complete the DNA comparison."

61.   After receiving Douard's letter, Laurino spoke with Douard by phone pertaining to his request, and Laurino agreed to go about obtaining the DNA comparison.

62.   Michele Bolan, an investigator at the Essex County Prosecutor's Office ("ECPO"), was tasked with obtaining Roberts's buccal (cheek) swabs, and to submit that, along with the sex crimes kit, to the New Jersey State Police Office of Forensic Sciences ("State Police Lab").

63.   Bolan took Roberts's buccal swabs on March 10, 2005.

#3931588

64. Bolan then arranged for another ECPO employee, Edward Schneider, to deliver the sex crimes kit and Roberts's buccal swabs to the State Police Lab, which he did on March 22, 2005.

65. Before having the DNA evidence submitted to the State Police Lab for testing, Laurino spoke with Joe Petersack, the then-Assistant DNA Laboratory Director at the New Jersey State Police Laboratory, regarding whether the case was suitable for DNA testing, and Petersack approved the DNA analysis request.

66. On March 22, 2005, Bolan called the State Police Lab pertaining to the DNA submission, and a State Police Lab Communication Log entry dated that same day states, in part, that "As per Joe Petersack – submission to include original rape kit, lab notes from Newark P.D. and subject's buccal swab."

67. On April 11, 2005, Charles Williams, a Forensic Scientist II with the State Police Lab Criminalistic Unit, reviewed the Newark Police Department Certificate of Analysis and handwritten Serology Report which Groller had prepared, to determine which samples had previously tested positive and therefore needed to be submitted to the State Police DNA Unit for analysis.

68. On April 11, 2005, Williams also examined the contents of the sex crime kit to determined which items had samples or stains on them so that he can submit those samples to the State Police DNA Unit for analysis.

69. Williams noted that one cardboard slide holder which was labeled "vaginal smear" contained two glass slides, one of which appeared to be stained.

70. Williams noted that the cardboard holders for the vaginal swabs and rectal swabs contained broken sticks which had missing swab tips, which were previously found to be positive.

71. Williams noted that an envelope which was labeled genital swabbing, which was previously found to be positive, was empty, and that an envelope labeled saliva sample was also empty.

72. Williams noted that the other items in the sex crimes kit had either previously tested negative or did not appear to have any samples or stains on them.

73. Williams submitted the vaginal smear glass slide, and Roberts's buccal swabs, to the DNA Unit for analysis.

74. On April 11, 2005, Williams also prepared a Criminalistics Laboratory Report which was submitted to the ECPO, which identified the two items submitted to the DNA Unit for analysis, and which also requested that a buccal control swab from the victim be submitted.

11

#3931588

75.  On April 14, 2005, according to the notes contained in the Forensic Science Laboratory Section Communication Log, dated April 14, 2005, Petersack called Laurino by phone and advised that the sex crimes kit did not contain the vaginal swab, genital swab, or the victim's saliva control, and Laurino advised Petersack that he would look into it and get back to him.

76.  Elliot Clark, a Forensic Scientist I with the State Police Lab DNA Unit, completed a DNA analysis on the two items submitted to the DNA Unit on June 8, 2005.

77.  As to the vaginal smear glass slide, the results of Clark's DNA analysis indicated the presence of female DNA, only.

78.  On July 7, 2005, according to the notes contained in the Forensic Science Laboratory Section Communication Log, dated July 7, 2005, Petersack spoke with Laurino by phone again regarding the missing swabs, and Laurino advised Petersack that he would look into it and get back to him.

79.  According to the notes contained in the Forensic Science Laboratory Section Communication Log, dated July 26, 2005, Petersack called Laurino again on July 26, 2005 regarding the missing swabs. Laurino told Petersack that everything that the Newark Police Department had was sent to the State Police Lab. Petersack therefore advised Laurino that they would scrape more of the glass slide in order to try to generate a male profile, a process which would prevent the slide from being tested again in the future testing, and Laurino consented and agreed that was okay.

80.  On August 10, 2005, Clark retested the slide by scraping it, however once again, only female DNA was detected.

81.  The 2005 DNA analysis was therefore inconclusive as to whether Roberts was the perpetrator of Atwell's 1996 assault.

82.  Clark prepared a DNA Laboratory Report dated August 29, 2005, noting the results of the DNA analysis. This Report was submitted to the ECPO, and Laurino sent it to Douard by letter dated October 6, 2005.

83.  Following Dr. Zeiguer's testimony on December 9, 2004, the Civil Commitment proceedings were adjourned to allow Roberts the opportunity to obtain a DNA comparison "in connection with his guilty plea to kidnapping, which involved, as well, a charge of aggravated sexual assault."

84.  The Civil Commitment hearing resumed on December 5, 2005, and January 9 and 17, 2006.

85.  On January 19, 2006, the Civil Commitment court issued its ruling from the bench. In part, the court emphasized that the "recent D.N.A. analysis were inconclusive." The court therefore disregarded the opinion of the doctors who testified on

#3931588

Roberts's behalf, "because the Court is convinced that both of the psychologists misjudged the reliability of the evidence of the rape of Sharonda Atw[ell]."

86.     Accordingly, the Civil Commitment court deemed it appropriate to consider the 1996 plea to kidnapping as a sexually-violent offense, and therefore to consider Roberts to be a violent sex offender in need of commitment.

87.     On January 25, 2006, the Civil Commitment court therefore entered a Judgment finding Roberts to be "a sexually violent predator in need of involuntary civil commitment in a secure facility."

88.     Over the years while in civil confinement, through and including his eventual release in 2014, Roberts participated in various treatment programs at the Special Treatment Unit. The Multidisciplinary Treatment Team Reports, and Special Treatment Unit Treatment Progress Review Committee continuously recommended that he be kept in "Phase (2) of the treatment," which prevented him from progressing through the treatment process which would have permitted him to be released from involuntary civil commitment.

89.     Meanwhile, armed with the 2005 inconclusive DNA results, and the September 27, 2005 statement from Atwell, Roberts filed a motion seeking post-conviction relief on February 15, 2006, and he refiled it on March 17, 2006.

90.     Before counsel could be assigned to assist Roberts, Judge Codey denied the motion on April 17, 2006.

91.     Roberts appealed the denial, and on May 22, 2007, the New Jersey Appellate Division reversed the denial so that Roberts could have the assistance of counsel in making his arguments.

92.     On May 22, 2007, following the Appellate Division's reversal, Douard reached out to the Public Defender's Office's post-conviction relief unit regarding Roberts's case, and offering his assistance in this matter given his familiarity with the issues.

93.     Shortly thereafter, Assistant Deputy Public Defender Stefan Van Jura was assigned to represent Roberts in his post-conviction relief proceedings, and he reached out to Douard regarding the matter, including the DNA analysis.

94.     On June 5, 2007, Van Jura asked Douard why a DNA test would not resolve the matter, and Douard advised that the rape kit only had female DNA in it.

95.     On June 5, 2007, Van Jura followed up, asking "if there is a better specimen that wasn't tested, or should the report be regarded as an analysis of the best sample?" to which Douard responded that "I think it should be considered the best sample, apart from any speculation of misconduct on the part of the prosecutor."

13

96.    At no time while Van Jura represented Roberts did he ever come to learn that additional materials from the sex crimes kit existed which was not submitted to the New Jersey State Police Laboratory for testing in 2005, and he believed that all materials which were compiled as part of the Atwell sex crimes kit were submitted to the State Police Lab in 2005 for testing.

97.    On July 26, 2007, oral arguments were held before Judge Codey but no testimony was taken at the time.

98.    On July 30, 2007, Judge Codey issued a written decision denying Roberts's motion for post-conviction relief.

99.    Roberts appealed, and on July 17, 2009, the New Jersey Appellate Division reversed the denial, finding that an evidentiary hearing was warranted in part on the issue of whether Atwell had made a photo identification back in 1996.

100.   The hearing continued on April 27, 2010 to allow Charles Martone, the Assistant Public Defender who represented Roberts during the plea agreement, to testify.

101.   Martone testified that in 1996 he was assigned to the pre-trial disposition court, to go through the backlog of cases and convey offers from the Prosecutor's Office to defendants and advise them that "this was the lowest plea offer" they would receive. When asked how many cases he had in a given day back then, he testified that he had "anywhere from 40 or 50 to 120 a day, average."

102.   When asked about Roberts's case specifically, Martone testified that "I have no independent recollection of that whatsoever. . . . I don't remember his case at all." He also testified that Assistant Prosecutor Rodriguez "showed me some police reports. It did not bring back any memories."

103.   During the April 27, 2010 continued hearing, Assistant Prosecutor Rodriguez advised the court that Van Jura had previously asked her to look for the photo Det. Eutsey claimed Atwell had signed.

104.   Assistant Prosecutor Rodriguez told the court that she had previously asked the Newark Police Department for the photograph, but wanted to have them look for it again as they could not find the photograph, or the file on this case generally.

105.   Assistant Prosecutor Rodriguez asked to take five minutes during the proceedings to call the Newark Police Department to check on the status of the photograph. She called, and then made the following representation in open court:

        Okay. I've just spoken with the lieutenant that was assigned to the case. He says that the lieutenant in charge of the sex crimes unit did go through the record room and her record room because this case was not in robbery homicide, it was in the sexual assault

14

unit. He says we could, we could try it again, but that she was,
she actually came in on a weekend on her off time to look for
the file itself and could not find it in the sexual assault unit.

106.   Assistant Prosecutor Rodriguez asked for another two weeks' time to have the
Newark Police Department search for the photograph and the file generally.

107.   Assistant Prosecutor Rodriguez explained to the court that the photograph "would
have been inside their file because it was a pre-indictment plea. It would never
have been brought up here to the Prosecutor's Office. That would only have
happened if it was a Grand Jury. So it's in their pos[sess]on if it exists at all."

108.   On May 17, 2010, Assistant Prosecutor Rodriguez received an email from Lt.
Teodoro Zangari of the ECPO, which stated the following: "I just spoke to Lt.
Kowalski of the Newark Police Department, Property Room. He stated that Special
Victims has two storage areas where he checked, the 3rd floor and 8th floor.
Unfortunately, Lt. Kowalski was not able to locate the file. He also stated that he
spoke to Lt. McPhee of Newark Police Department, Special Victims, who told him
that she looked in her Unit with negative results."

109.   Based on the above, Assistant Prosecutor Rodriguez advised Judge Codey of the
search results by letter the following day—May 18, 2010.

110.   After this lawsuit was filed, the City of Newark and the Newark Police Department
made additional efforts to locate the photograph, and the file on this case generally.

111.   Lt. Jack J. Clarkin, the former Commanding Officer of the Newark Police
Department's Property and Evidence Division, together with Police Officer John
Lebron, searched for the photograph, and for the file generally, over two or three
days.

112.   While Lt. Clarkin and Officer Lebron located boxes containing 1996 Sexual
Assault files on the 8th floor of the Property and Evidence Room, and they found
the box which this Criminal Complaint number should have been in because it
contained the Criminal Complaint numbers before and after this one, the file
pertaining to this case was not amongst those files.

113.   Lt. Clarkin also searched for 1996 flat line evidence, but could not find any.
Following his searches, Lt. Clarkin concluded that at "this time, there are no other
known Property Room locations for this piece of evidence."

114.   Lieutenant Catherin Johns and Detective Eusnelys Tellez of the Newark Police
Department legal affairs also responded to assist in the search but did not find the
photograph or file.

15

115.  The Newark Police Department Property & Evidence Division Sergeant, Al Tariq Dunson, also searched for the photograph and file, but he also could not find either.

116.  Lt. Michelle MacPhee searched for the file on this case again in 2017, but could not find it. Darrin Marasco, who was promoted to a Newark Police Captain in 2017 and "put in charge of the property and evidence division" at that time, also searched for the file in the summer of 2017 but could not locate it.

117.  In a written decision dated May 19, 2010, Judge Codey again denied Roberts's motion for post-conviction relief, and Roberts appealed.

118.  On March 8, 2013, the New Jersey Appellate Division reversed the 2010 denial. In part, it found that Atwell's statement, and the 2005 DNA evidence, cast doubt on the integrity of Roberts's conviction for kidnapping. The Appellate Division however noted the lack of expert testimony as to the DNA evidence, and therefore it would not vacate Roberts's conviction on its own.

119.  Following the Appellate Division's 2013 remand, Assistant Prosecutor Rodriguez contacted Elliot Clark regarding the DNA evidence.

120.  After speaking with Clark, Assistant Prosecutor Rodriguez reached out to individuals within her office to attempt to locate the sex crimes kit.

121.  Assistant Prosecutor Rodriguez also asked that an investigator from her office be assigned to help her gather all evidence and materials related to his case.

122.  In response to Assistant Prosecutor Rodriguez's request, Det. Christine Witkowski from the ECPO was assigned to assist her with this matter. The two met on the morning of June 10, 2013, and Det. Witkowski was asked to locate all evidence she could find related to this case.

123.  On June 10, 2013, Det. Witkowski called Lt. MacPhee at the Newark Police Department, who had agreed to help locate related evidence at the Newark Police Department.

124.  After speaking with Det. Witkowski, Lt. MacPhee contacted Lt. John Evengalista, who worked in the Newark Police Department's building located at 22 Franklin Ave, in Newark, New Jersey, where the old Newark Lab was located, and asked him to look for any evidence related to this Criminal Complaint number.

125.  Lt. Evangelista went upstairs to the old Newark Police Forensic Lab's refrigerators, went through the shoe-box sized boxes containing materials separated from sex crimes kits, and located the white envelope in which Groller had placed the materials he had retained from Atwell's sex crimes kit back in 1996.

#3931588

126. That white envelope had not been moved from the Newark Lab's refrigerator from when Groller placed it there on July 18, 1996, until Lt. Evangelista retreived it on June 10, 2013.

127. That same day, July 10, 2013, Det. Witkowksi was advised that the Newark Police Department located evidence related to the case, and she responded to 22 Franklin Street where she met with Lt. John Evangelista.

128. Lt. Evangelista handed Det. Witkowksi the white envelope which Groller had marked up and in which he had retained the materials which he separated from Atwell's sex crimes kit on July 18, 1996.

129. Det. Witkowski advised Assistant Prosecutor Rodriguez that she had this envelope, as well as additional evidence related to this case, in an email dated June 10, 2013 at 3:06 PM.

130. On behalf of Roberts, his new attorney, Michael Pastacaldi, inquired as to whether the ECPO would consent to DNA testing of this additional material. Assistant Prosecutor Rodriguez conferred with Laurino on the matter, who "asked that the defense in this case just file" a motion seeking DNA testing pursuant to N.J.S.A. 2A:84A-32.

131. Pastacaldi filed the motion for DNA testing, which the court granted.

132. On September 19, 2013, the white envelope was brought down to the State Police Lab to determine what was in it.

133. On September 19, 2013, Allison Lane, a Forensic Scientist with the State Police Lab who was assigned to verify the contents of the white envelope, opened the outer white envelope, and she found four smaller brown coin envelopes contained therein, which were labeled "V.S.," "A.S.," "G.S.," and "saliva," which contained two swab tips, two swab tips, a gauze pad, and a filter paper, respectively.

134. The brown coin envelopes which Lane found inside the white envelope appeared exactly as Groller had initially packed the materials back on July 18, 1996.

135. The materials from the brown coin envelopes were submitted to the DNA Unit, and on October 24, 2013, Elliot Clarke performed a DNA analysis on these previously-missing materials.

136. After analyzing the materials from the brown coin envelopes, Clark generated a male profile, and the DNA analysis concluded that Roberts was not the source of the male DNA located on the previously-missing tips from Atwell's 1996 sex crimes kit.

17

137.  Roberts's post-conviction relief proceedings continued on November 20, 2013, at which time Judge Sherry Hutchins-Henderson vacated Roberts's conviction and prior plea agreement based upon the newly-discovered DNA evidence.

138.  In an Order dated November 21, 2013, the Court noted that Roberts's "conviction for Kidnapping, contrary to N.J.S.A. 2c:13-1, on Accusation 96-07-1128 is hereby **VACATED** for reasons discussed on the record on November 20, 2013 based upon the new exculpatory DNA evidence."

139.  The charges against Roberts were not dismissed November 20, 2013, and the ECPO was given time to determine whether it would try Roberts on the original charges—sexual assault and kidnapping.

140.  On December 19, 2013, Roberts filed a pro se motion seeking a speedy trial.

141.  The Essex County Prosecutor's Office elected not to try Roberts, and the charges against him were dismissed on February 20, 2014.

142.  Meanwhile, in March and April 2012, the Assistant Deputy Public Defender who had represented Roberts in his ongoing annual reviews to determine the need for continued civil commitment, had written letters to the Clinical Psychologist at the Special Treatment Unit regarding Roberts's annual review.

143.  Roberts's attorney in the review proceedings annexed Atwell's certification wherein Atwell denied identifying Roberts as her assailant, as well as the results of the 2009 paternity test, given that Atwell believed at the time that her child was the product of her May 8, 1996 assault. Roberts's attorney advised that this evidence exonerated him of the sexual assault.

144.  On April 19, 2012, the Special Treatment Unit added an Addendum to its most recent report, which stated, in part, that "Due to the ongoing nature of his Post Conviction Relief efforts, no discernible modifications can be made to Mr. Roberts' current treatment plan or treatment trajectory. In the event that Mr. Roberts is deemed innocent of this offense, his risk to sexually recidivate will be reevaluated."

145.  Accordingly, on January 6, 2014, following the vacature of Roberts's conviction on November 21, 2013, he filed a pro se motion seeking an Accelerated Review Hearing as to the need for continued civil commitment.

146.  After the charges against Roberts were dismissed on February 20, 2014, the State of New Jersey Office of the Attorney General moved to dismiss the petition for civil commitment.

#3931588

147.   On March 10, 2014, the court overseeing the Civil Commitment proceedings dismissed the petition with prejudice, and ordered that Roberts be released no later than March 12, 2014.

148.   On March 12, 2014, Roberts was finally released from custody.

**4.      JUDICIAL NOTICE**

A. Plaintiff requests that the Court take judicial notice of the following facts:

n/a

B. Defendant objects to the taking of judicial notice for the following reasons:

**5.      JUDICIAL NOTICE**

**Defendants City of Newark and Det. Eutsey**

A. Defendants Newark and Eutsey request that the Court take judicial notice of the following facts:

n/a

B. Plaintiff objects to the taking of judicial notice for the following reasons:

**Defendants Essex County Prosecutor's Office and AP Laurino**

A. Defendants ECPO and Laurino request that the Court take judicial notice of the following facts:

n/a

B. Plaintiff objects to the taking of judicial notice for the following reasons:

**6.      PLAINTIFF'S CONTESTED FACTS** (Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

A. Plaintiff intends to prove the following contested facts with regard to liability:

1.      Only suspect photographs which had been taken by the Newark Police Department, were utilized by the Newark Police Department in their photo identification procedures.

#3931588

2.  Det. Eutsey only had Ms. Atwell look through suspect photographs after he had prepared the statement for her to sign, and after he had already had her sign it.

3.  Ms. Atwell was unable to, and did not, identify her assailant.

4.  Ms. Atwell did not cry upon seeing a photograph of Roberts nor did she tell Det. Eutsey that this was the male who attacked her.

5.  Ms. Atwell never signed or dated a photograph of Roberts.

6.  While Det. Eutsey prepared a Property and Evidence Receipt purportedly pertaining to a photograph of Roberts, that does not confirm that a signed photograph of Roberts ever existed.

7.  Det. Eutsey knowingly and intentionally fabricated the statement he had Atwell sign.

8.  In that fabricated statement, Det. Eutsey falsely stated that Atwell had made a photo identification, and that she had signed and dated the back of the identified photograph.

9.  In that fabricated statement, Det. Eutsey falsely stated that Atwell had identified a photograph of Plaintiff, Rodney Roberts, as that of her assailant, and that Atwell read the statement and corrected mistakes contained therein.

10. Even if a photograph of Roberts had been identified, Det. Eutsey knew that a 10-year-old photograph of Roberts did not accurately portray Roberts as he appeared in May 1996.

11. Det. Eutsey prepared a Continuation Report wherein he also falsely stated facts pertaining to the investigation of Ms. Atwell's assault.

12. For example, Det. Eutsey falsely stated in the Continuation Report that Ms. Atwell indicated she could make a photo identification, and that Ms. Atwell in fact identified a photograph of Roberts as that of her assailant.

13. Det. Eutsey He also falsely stated in the Continuation Report the facts pertaining to his interview of Ms. Atwell and the statement he had her sign.

14. The Continuation Report was not drafted contemporaneously.

15. In addition to the Continuation Report, Det. Eutsey also provided the Assistant Prosecutor with the statement Atwell signed, but he did not provide the Assistant Prosecutor with any photographs.

#3931588

16.  Det. Eutsey also did not tell the Assistant Prosecutor that Atwell had told him that she was not in a position to identify her assailant or that she could not make and identification.

17.  Det. Eutsey also did not tell the Assistant Prosecutor that Atwell did not sign or date a photograph and that he had fabricated the statement he had her sign.

18.  Det. Eutsey obtained warrants for Roberts's arrest despite knowing there was no probable cause for the charged crimes.

19.  Roberts maintained his innocence to Martone at all times, but he agreed to plead guilty because Martone misrepresented the strength of the prosecutor's case and assured Roberts that if he did not accept the plea agreement, he would spend the rest of his life in prison.

20.  Det. Eutsey was present in the courthouse when Roberts plead guilty on July 16, 1996.

21.  Det. Eutsey never advised Atwell that a suspect had been arrested or charged for her assault, or that the suspect plead guilty to the crime and was sentenced on it.

22.  Pursuant to the policies of the Newark Police Forensic Laboratory, Senior Forensic Chemist Joseph Groller separated the positive samples from the Atwell sex crimes kit, repackaged them into small brown coin envelopes, which he then placed in one slightly bigger post-card-sized white envelope.

23.  In separating items from sex crimes kits which were positive for bodily fluids and stains and separately retaining them in white envelopes which were then stored in the Newark Police Forensic Laboratory refrigerators, Groller followed the policies and procedures that were already in place within the Newark Police Forensic Laboratory.

24.  Groller was directed to follow this procedure outlined in Paragraph 23, above, by his prior boss, Chief Chemist Annie Lanier, as well as the serologist who preceded him.

25.  Members of the Newark Police Department at large other than those assigned to the Newark Police Forensic Laboratory, did not know of this policy and procedure outlined in Paragraph 23, above.

26.  Roberts was not aware that a rape kit was conducted or that it was positive for semen stains.

27.  ECPO Inv. Michelle Bolan collected the sex crimes kit from the Newark Police Department on February 17, 2005, but the positive samples Mr. Groller had

#3931588

separated from the rape kit and stored in the white envelope within the Newark Police Lab were not contained therein.

28. Rather, the positive samples Mr. Groller had separated from the rape kit and stored in the white envelope remained in the same box, within the same refrigerator in the Newark Police Forensic Laboratory where Groller had initially placed them, and they were not moved from that location until Lt. Evangelista retrieved them on June 10, 2013.

29. Assistant Prosecutor Robert Laurino reached out to the Newark Police Department regarding the materials which the State Police Laboratory had advised were missing from the Atwell sex crimes kit and asked them to search for it.

30. The Newark Police Department could not locate the missing materials in response to Assistant Prosecutor Laurino's requests, and they advised him that everything that the Newark Police Department had related to the Atwell sex crimes kit was submitted for testing.

31. On September 12, 2005, Atwell had come to the ECPO to submit a buccal swab control, and she met with Inv. Bolan, who took her buccal swabs on that day.

32. Bolan submitted Atwell's buccal swabs into the ECPO property room. It was never submitted to the State Police Lab.

33. Neither Joe Petersack, nor anyone from the State Police Lab, reached out to Douard or anyone else representing Roberts, regarding any process of the DNA testing or related issues—they only reached out to Laurino.

34. Laurino told Douard that the DNA analysis was inconclusive because the DNA material had degraded over time.

35. Prior to 2013, Laurino did not tell Douard, anyone else who represented Roberts, anyone else from the ECPO, or the courts, that the State Police Lab had advised or indicated to him that material was missing from the sex crimes kit or that the Newark Police Department did not submit all materials from the sex crimes kit for DNA testing.

36. Sometime between September 20, 2004 and December 17, 2004, before the DNA analysis was requested, Douard, along with Ronald Price, an investigator with the Public Defender's Office, met with and interviewed Atwell in her apartment.

37. During Douard and Price's 2004 interview, Atwell told them that she was taken to the hospital after the assault on May 8, 1996, and that at some point while there, police brought a suspect into her room and asked if she was able to identify him as the assailant, but she was unable to do so.

22

38.   During Douard and Price's 2004 interview, Atwell also told them that she never made a photo identification, and did not know that anyone was arrested for the assault.

39.   On September 27, 2005, after the results of the DNA analysis came back as inconclusive, Douard and Price met with Atwell again to obtain a statement from her consistent with what she had told them the year before.

40.   Douard had prepared a statement for Atwell to sign consistent with what he recalled Atwell telling them in 2004.

41.   During that meeting on September 27, 2005, Atwell struck out one sentence on the statement Douard had prepared, and she dictated another paragraph to Price which Price handwrote on that statement in Atwell's presence and which Atwell and Price then signed.

42.   The sentence Atwell struck out on that September 27, 2005 statement stated the following: "I was not contacted thereafter, and never made a photo identification or take to the police station."

43.   The paragraph Atwell then dictated to Price on September 27, 2005 states as follows: "I did give a[ ] statement to the police but please note that when I was taken to the police station shortly after the assault, I was shown photos of possible assailants & could not identify an as my assailant. After the events transpired & my visits to the police, no one ever got in contact with me until you (John Doard, ADDD & Ronald Price, Investigator) showed up last year."

44.   In 2007, Van Jura requested that Price locate Atwell again so that she could sign a certification acknowledging the truth of her September 27, 2005 statement.

45.   Price contacted Atwell and arranged to meet with her. Van Jura then typed out a certification which he transmitted to Price.

46.   Price met with Atwell in person on June 22, 2007, at which time he had Atwell review a copy of the September 27, 2005 statement.

47.   After Atwell confirmed that the September 27, 2005 statement was true, he had her sign the Certification Van Jura had prepared. It states the following: "I have reviewed the statement I previously gave to investigator Ronald Price on September 27, 2005, and it is true to the best of my knowledge and belief."

48.   Van Jura submitted a brief in further support of Roberts's motion for post-conviction relief, dated June 25, 2007.

49.   Assistant Prosecutor Clara M. Rodriguez was assigned to oppose Roberts's motion for post-conviction relief, and she submitted an opposition dated July 23, 2007.

23

#3931588

50. Before Assistant Prosecutor Rodriguez prepared the opposition dated July 23, 2007, she communicated with Laurino regarding the case.

51. Assistant Prosecutor Rodriguez shared an office with Laurino for several years, and around 2007, the two communicated on an almost-daily basis.

52. At no time did Laurino tell Rodriguez that the complete Atwell sex crimes kit was not submitted to the State Police Lab for testing in 2005, or that the State Police Lab had reached out to him regarding materials which were missing from the rape kit.

53. Accordingly, Rodriguez believed that in 2005, the complete sex crimes kit was submitted to the State Police Lab for DNA testing, but that the results were now inconclusive despite the presence of semen in 1996 because the DNA materials had degraded due to the passage of time.

54. An evidentiary hearing was held on October 27, 2009. Roberts, Atwell, Bolan and Det. Eutsey testified during the hearing.

55. October 27, 2009, Atwell testified, in part, that she did not recognize Roberts, had never seen him before, to her knowledge she did not make a photo identification of anyone, and she has no recollection of signing a photograph—front or back. She also addressed Roberts directly, and asked him: "I want to know why did you confess to something that you didn't do to me?"

56. During the October 27, 2009 hearing, Atwell also mentioned that she had a child which she thought may have been the product of the rape.

57. When Atwell was at the ECPO on September 12, 2005, she advised Bolan that she believes she may have become pregnant from the 1996 rape, and she requested a paternity test.

58. Bolan had discussed Atwell's request for a paternity test with Laurino, however Laurino denied the request because Atwell had told Bolan she had sex with another individual around the time of the rape.

59. During the October 27, 2009 hearing, Judge Codey ordered that a paternity test be conducted. The DNA results proved that Roberts was not the father of Atwell's child.

60. A photograph of Roberts which was signed and dated by Ms. Atwell was not lost. Rather, it never existed.

61. Assistant Prosecutor Rodriguez had been asking the Newark Police Department to search for the photograph, and the file on this case generally, since she was first assigned to this case in 2007, and she continued asking them to search for the file and photograph from 2007 through 2009.

24

#3931588

62.  Assistant Prosecutor Rodriguez asked Det. Eutsey about the photo's, and the file's, whereabouts.

63.  Ultimately however, Assistant Prosecutor Rodriguez never received the photograph, or the file on this case generally, from the Newark Police Department, as they could not locate it.

64.  Newark Police Captain Darrin Marasco spent a "long day," "about four to six hours, maybe longer," searching for the photo Atwell allegedly signed, and the file in this case generally, together with the attorneys representing and the City of Newark and Det. Eutsey in this case—Gary Lipshutz, Esq. and Emilia Perez, Esq.

65.  Indeed, on October 17, 2017, Mr. Lipshutz made the following representations to the Court in this case:

> Okay. With regard to the documents in the file for this incident in the sex crimes file, which was is a 1996 investigation, we can't find the file. So I just don't - - I don't know what else to say. We can't find the file.
>
> And I know that we can't find the file. And I'll represent to Your Honor that I have looked in the property room, in eight floors of property room, which contains tens of millions of the items. I have tried my very best to find this file.
>
> We found an archived box from 1996 from the sex crimes department, which would contain in the sequential number, this particular file. If you look at the CC number, which is 98542, that would be the -- excuse me -- 38542, that would be the 38,542 investigation or police action from 1996.
>
> We found the documents in that range, the file -- excuse me -- the box. But the file itself was not there.
>
> So I can't give -- we can't give a file that we can't find. And I don't know what would [be] in that file. I suspect the photograph would have been in that file. I can't find it, though.

66.  Finally, by letter dated January 16, 2018, counsel for the City of Newark and Det. Eutsey confirmed that they "made a reasonable, full and extensive search of all of the City's records pertaining to this matter and have conducted a full and reasonable inquiry of City employees," and that they are not in possession of the file, or photograph, pertaining to this matter.

#3931588

67. The photograph, or the file in this case generally, was not destroyed as a matter of course, given that the State of New Jersey's retention schedule prohibited their destruction.

68. According to the retention schedule implemented by the State of New Jersey, which the City of Newark and its Police Department is bound by, criminal case files in New Jersey have a 75-year retention schedule.

69. The City of Newark's Archives and Records Management Center, where the City of Newark maintains and preserves the City's records, including files dating back from the 1800s to the present, has never destroyed any Newark Police Department criminal files.

70. While the City of Newark's Archives and Records Management Center started receiving criminal files from the City of Newark in 2005, it does not, and has not in the past, taken in any homicide or sexual assault files, and it has never destroyed any sexual assault files—both prior to, or after, 2005.

71. Similarly, the Newark Police Department Property and Evidence Room still maintains old homicide and sexual assault files.

72. Roberts was conclusively exonerated as the perpetrator of Atwell's May 8, 1996 assault.

73. Following the Appellate Division's March 8, 2013 remand, Michael Pastacaldi, Esq. was assigned to represent Roberts.

74. Given the Appellate Division's comments in its 2013 decision regarding the lack of expert testimony as to the DNA evidence, Mr. Pastacaldi contacted Assistant Prosecutor Rodriguez to see if there was any additional materials to test for DNA evidence—she indicated she would start looking.

75. Similarly, given the Appellate Division's comments in its 2013 decision regarding the lack of expert testimony on the DNA issue, after the 2013 remand, Assistant Prosecutor Rodriguez contacted the State Police Lab and spoke with Elliot Clark in anticipation of having him testify at a hearing on the matter.

76. During Assistant Prosecutor Rodriguez's call with Elliot Clark following the 2013 remand, Clark told her that material was missing from the sex crimes kit which was sent to the State Police Lab for testing in 2005, and that the State Police Lab had reached out to the ECPO back in 2005 to request the missing material, but that it could not be located. This information was news to Assistant Prosecutor Rodriguez, as Laurino had never indicated these facts to her.

#3931588

77. In February 2014, based upon the exculpatory DNA evidence, and Atwell stating that she had not identified a photograph of Roberts back in 1996, the ECPO determined not to try Roberts on the charges.

78. On February 20, 2014, a Judgment dismissing the charges against Roberts was entered.

79. Over the years, Roberts refused to admit to having sexually assaulted Atwell. Accordingly, during his annual civil commitment evaluations and review hearings he was repeatedly found to deny his wrongdoings and appeared to be minimizing his alleged unlawful conduct, focusing instead on legal justifications for his acts and that fact that DNA evidence exonerated him.

80. Accordingly, the Multidisciplinary Treatment Team Reports, and Special Treatment Unit Treatment Progress Review Committee continuously recommended that he be kept in "Phase (2) of the treatment," which prevented him from progressing through the treatment process which would have permitted him to be released from involuntary civil commitment.

B. Plaintiff intends to prove the following contested facts with regard to damages: (This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages.)

1. Roberts is seeking $1.5 million in compensatory damages as to his § 1983 claims against Det. Eutsey and the City of Newark, as authorized by relevant caselaw, for each year of incarceration and civil confinement – from 1996 through 2014. Roberts is entitled to recover § 1983 damages for all the years he remained incarcerated/confined, and his subsequent arrest has no bearing on this matter.

2. The contested facts as to liability which are enumerated in Paragraph 6(A) above are incorporated as though fully stated here, as those contested facts form the basis of Roberts's entitlement to the damages he is seeking as to his § 1983 claims.

3. Roberts will be seeking $900 in lost income against all defendants to compensate him for the years lost between 1996 and 2014. Roberts will be testifying regarding his employment prior and subsequent to his imprisonment/confinement.

4. Roberts is seeking $3.5 million in punitive damages against Det. Eutsey.

5. Det. Eutsey acted with malice, or at the very least with reckless or callous indifference to Roberts's rights when he (1) fabricated Atwell's identification which was used to prosecute Roberts, or (2) if an identification was made, disregarded facts undermining the veracity of the identification.

#3931588

6.  The contested facts as to liability which are enumerated in Paragraph 6(A)(1-21, 39-47, 54-55, 60-71) above are incorporated as though fully stated here, as those contested facts form the basis of Roberts's entitlement to punitive damages against Det.

7.  Plaintiff is also seeking attorney's fees pursuant to 42 USC § 1988.

7.  **DEFENDANTS' CONTESTED FACTS** (Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

**Defendants City of Newark and Det. Eutsey**

A.  Defendant intends to prove the following contested facts with regard to liability:

1.  Ms. Atwell positively identified a stranger, Roberts, in 1996 as her assailant and signed a photo of Roberts without coercion.

2.  Ms. Atwell signed all pages of her statement under oath and made corrections.

3.  Roberts had a prior sexual assault.

4.  Eustey did not know Roberts and had no reason to consider Roberts a suspect until Atwell's random identification.

5.  Eutsey did not fabricate any evidence.

6.  Eutsey had probable cause based upon Ms. Atwell identification of a stranger (Roberts).

7.  Ms. Atwell admitted that her subsequent affidavits with recantations were not truthful.

8.  Ms. Atwell admitted that her subsequent affidavits were made under pressure from the Public Defender.

9.  When Ms. Atwell testified at the Post Conviction Relief hearing before Judge Codey, she did not say that she never made any photo identification; she clarified that she simply did not recall doing so.

10. Ms. Atwell admitted that Eustey did not fabricate any evidence.

11. Ms. Atwell has no present recollection of her 1996 identification and therefore her recantation is not reliable.

#3931588

12. Eustey did not make any false statements or omissions in applying for an arrest warrant.

13. Plaintiff was aware from the outset of the criminal case that Groller prepared a report detailing his examination of the specimens.

14. Plaintiff pled guilty on his accord when he could have challenged the allegations and therefore is responsible for his incarceration/commitment.

15. Plaintiff did not requested DNA testing until 2005.

16. Prior to 2013, no one asked Newark Police to provide the specimens found in the Crime Lab.

17. Newark Police preserved the specimens in the location where they always were.

18. Laureno cannot say that he asked Newark Police in 2005 to provide the specimens because he has no recollection of any such request, despite several requests from the State to provide the specimens.

19. The separation of the swabs from the Rape Kit was not done pursuant to any official policy of the Newark Police Department and therefore cannot support any Monell claim of policy, custom or practice.

20. No other person has alleged any injury or constitutional violation related to the separation of swabs and storage at the Newark Crime Lab. A one time event does not support Monell liability.

21. Newark had no legal obligation to preserve the specimens in accordance with AG Guidelines.

22. No Newark defendant was negligent.

23. The City of Newark is not vicariously liable.

B. Defendant intends to prove the following contested facts with regard to damages: (This statement must include the factual basis for each defense against plaintiff's claims for damages.)

1. Plaintiff is not able to prove any permanent loss of bodily function and therefore the City Defendants are not liable in damages for any common law torts.

2. Plaintiff was legally incarcerated for unrelated crimes and therefore the City Defendants are not liable for such period of incarceration.

#3931588

3.  The Newark Defendants cannot be liable for any period of incarceration/civil commitment prior to 2005 because Plaintiff never requested DNA testing until then.

4.  Plaintiff was convicted of a criminal offense after his release from custody and any damages should reflect Plaintiff's continued criminal behavior post release.

**Defendants Essex County Prosecutor's Office and AP Laurino**

A.  ECPO Defendants intend to prove the following contested facts with regard to liability:

1.  At all relevant times, and as to all allegations directed at ECPO Defendants in connection with the DNA analysis, no actions/omissions on behalf of ECPO Defendants constituted any legal duty owed to Plaintiff.

2.  At all relevant times, and as to all allegations directed at ECPO Defendants in connection with the DNA analysis, no actions/omissions on behalf of ECPO Defendants constituted any breach of any legal duty owed to Plaintiff.

3.  More specifically, no actions/omission alleged against ECPO Defendants in connection with the 2005 State Lab report and/or the scope of the DNA testing done in 2005 constitute any "misrepresentation" attributable to ECPO Defendants such that any legal duty of care was owed to Plaintiff or likewise was breached, whether asserted by Plaintiff as direct against Laurino or derivative against ECPO.

    (The following paragraphs first set forth Plaintiff's recitation of facts, followed by what ECPO Defendants intend to show):

4.  Meanwhile, on September 12, 2005, Atwell had come to the ECPO to submit a buccal swab control. She met with Inv. Bolan, who took her buccal swabs on that day. Bolan then submitted Atwell's buccal swabs into the ECPO property room. It was never submitted to the State Police Lab.

    In response to Plaintiff's recitation above, ECPO Defendants dispute and will show that both the kit and Roberts's buccal swab were received by the State Lab in March 2005, in addition, at no point did Bolan open the rape kit, which had been sealed in 1996.

5.  Neither Petersack, nor anyone from the State Police Lab, reached out to Douard or anyone else representing Roberts, regarding any process of the DNA testing or related issues—they only reached out to Laurino. Prior to 2013, Laurino did not tell Douard, anyone else who represented Roberts, anyone else from the ECPO, or the courts, that the State Police Lab had advised or indicated to him that material was missing from the sex crimes kit or that the Newark Police Department did not

#3931588

submit all materials from the sex crimes kit for DNA testing. Laurino told Douard that the DNA analysis was inconclusive because the DNA material had degraded over time.

In response to Plaintiff's recitation above, ECPO Defendants dispute and will show that Laurino did not tell Douard, anyone else who represented Roberts, anyone else from the ECPO, or the courts, that the State Police Lab had advised or indicated to him that material was missing from the sex crimes kit or that the Newark Police Department did not submit all materials from the sex crimes kit for DNA testing.

ECPO Defendants will show that they were not negligent in the communication of any information pertaining to the rape kit and scope of testing, i.e., that any such conduct by ECPO Defendants would amount to foreseeable harm to Plaintiff, and/or such that Plaintiff would have a viable cause of action.

6. Van Jura submitted a brief in further support of Roberts's motion for post-conviction relief, dated June 25, 2007. Assistant Prosecutor Clara M. Rodriguez was assigned to oppose the motion, and she submitted an opposition dated July 23, 2007. Prior to doing so, she communicated with Laurino regarding the case. She shared an office with him for several years, and around 2007, the two communicated on an almost-daily basis. However, at no time did Laurino tell Rodriguez that the complete Atwell sex crimes kit was not submitted to the State Police Lab for testing in 2005, or that the State Police Lab had reached out to him regarding materials which were missing from the rape kit. Accordingly, Rodriguez believed that in 2005, the complete sex crimes kit was submitted to the State Police Lab for DNA testing, but that the results were now inconclusive despite the presence of semen in 1996 because the DNA materials had degraded due to the passage of time.

In response to Plaintiff's recitation above, ECPO Defendants dispute and will show that there was no communication between Laurino and Rodriguez re. the complete sex crimes kit.

7. Atwell also mentioned that she had a child which she thought may have been the product of the rape. Apparently when Atwell was at the ECPO on September 12, 2005, she advised Bolan that she believes she may have become pregnant from the 1996 rape, and she requested a paternity test. Bolan had discussed Atwell's request with Laurino, however Laurino denied the request because Atwell had told Bolan she had sex with another individual around the time of the rape. During the October 27, 2009 hearing, Judge Codey ordered that a paternity test be conducted. The DNA results proved that Roberts was not the father of Atwell's child.

In response to Plaintiff's recitation above, ECPO Defendants dispute and will show that Laurino denied any request for paternity test.

#3931588

8. Following the Appellate Division's remand, Michael Pastacaldi, Esq. was assigned to represent Roberts. Given the Appellate Division's comments regarding the lack of expert testimony as to the DNA evidence, he contacted Assistant Prosecutor Rodriguez to see if there was any additional materials to test for DNA evidence—she indicated she would start looking. Similarly, given the Appellate Division's comments regarding the lack of expert testimony on the issue, after the Appellate Division's 2013 remand, Assistant Prosecutor Rodriguez contacted the State Police Lab and spoke with Elliot Clark in anticipation of having him testify at a hearing on the matter. During the call, he told her that material was missing from the sex crimes kit which was sent to the State Police Lab for testing in 2005, and that the State Police Lab had reached out to the ECPO back in 2005 to request the missing material, but that it could not be located. This information was news to Assistant Prosecutor Rodriguez, as Laurino had never indicated these facts to her.

In response to Plaintiff's recitation above, ECPO Defendants dispute and will show that Laurino never indicated such facts to Rodriguez.

9. The conduct of ECPO Defendants fell within all governing guidelines.

B. Defendant intends to prove the following contested facts with regard to damages: (This statement must include the factual basis for each defense against plaintiff's claims for damages.)

1. Regarding damages, and without conceding liability, ECPO Defendants will nonetheless show that Plaintiff has failed to demonstrate that he has sustained any damages/harm arising out of any recognizable cause of action — whether economic or non-economic; emotional, physical, or otherwise — attributable to ECPO Defendants.

2. Likewise, ECPO Defendants will show that Plaintiff has failed to demonstrate sufficient proofs, such that any factfinder may determine, that he is entitled to any damages/harm arising out of any recognizable cause of action — whether economic or non-economic; emotional, physical, or otherwise — attributable to ECPO Defendants.

3. More specifically, and likewise, ECPO Defendants will show that any proofs offered by Plaintiff fail to vault the threshold to recover for non-economic damages, as set forth in the Tort Claims Act. N.J.S.A. 59:1-1, et seq.

#3931588

8.    **PLAINTIFF'S FACT WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)**

<u>Plaintiff</u>

1.  Rodney R. Roberts, Plaintiff
    c/o Law Office of Mirel Fisch
    2329 Nostrand Ave, Suite 100, Brooklyn, New York 11210

2.  Sheronda Atwell
    To be provided once obtained

3.  Derrick Eutsey, Defendant
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

4.  Joseph Groller
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

5.  Lt. Catherine John
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

6.  Jack J. Clarkin
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

7.  Darrin Marasco
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

8.  James Simpson
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

9.  Jose Da Silva
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

10. Michelle MacPhee
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

#3931588

11. John P. Evangelista
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

12. City of Newark, Defendant, by:
    a.  John P. Evangelista
    b.  Jose Da Silva
    c.  Darrin Marasco
    d.  James Simpson
    e.  Michelle MacPhee
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 0710

13. Gary Lipshutz, Esq.
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

14. Emilia Perez, Esq.
    c/o Newark Corporation Counsel
    920 Broad St, Newark, New Jersey 07102

15. John Douard
    To be provided once obtained

16. Ronald J. Price
    To be provided once obtained

17. Stephan Van Jura
    To be provided once obtained

18. Michael Pastacaldi
    35 Journal Square, Suite 405
    Jersey City, NJ 07306

19. Robert D. Laurino, Defendant
    c/o New Jersey Office of the Attorney General
    25 Market St,, Trenton, New Jersey

20. Michele R. Bolan
    c/o New Jersey Office of the Attorney General
    25 Market St,, Trenton, New Jersey

21. Clara M. Rodriguez
    To be provided once obtained

#3931588

22. Babara A. Rosenkrans
    To be provided once obtained

23. Christine Witkoswki
    To be provided once obtained

24. Robert Leake
    Emerald Investigations
    PO Box 1054, Bellmore, New York 11710

25. Joseph Petersack
    176 Grayson Ave, Mercerville, New Jersey 08619

26. Charles K. Williams
    c/o NJSP Central Regional Laboratory
    1200 Negron Drive, Hamilton, New Jersey 08691
    OFSCentralReports@njsp.gov

27. Allison Lane
    c/o NJSP Central Regional Laboratory
    1200 Negron Drive, Hamilton, New Jersey 08691
    OFSCentralReports@njsp.gov

28. Elliot C. Clark
    c/o NJSP East Regional Laboratory
    500 Sea Girt Ave Bldg 9, Sea Girt, New Jersey 08750
    OFSEastreports@njsp.gov

29. Various custodians of records, as needed.
    In the event any defendant objects to the admissibility of documents and/or records on foundation or authentication grounds, Plaintiff will call custodians of records or other appropriate individuals from these entities/companies, to testify as to those facts.

9.    **DEFENDANTS' FACT WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)**

**<u>Defendants City of Newark and Det. Eutsey</u>**

1.    The City Defendants may call any of the witnesses identified by Plaintiff. If Plaintiff does not call the identified witnesses, then the City will call:

#3931588

2. Defendant Derrick Eutsey
   c/o Newark Corporation Counsel
   920 Broad St, Newark, New Jersey 07102

3. Joseph Groller
   To be provided once obtained

4. Sharonda Atwell
   To be provided once obtained

5. Robert Laureno
   To be provided once obtained

**Defendants Essex County Prosecutor's Office and AP Laurino**

1. Robert D. Laurino, Defendant
   c/o New Jersey Office of the Attorney General
   25 Market St, Trenton, NJ 08625

2. Michele R. Bolan
   c/o New Jersey Office of the Attorney General
   25 Market St, Trenton, NJ 08625

10. **EXPERT AND SPECIALIZED LAY OPINION WITNESSES (No expert or specialized lay opinion witness offering scientific, technical or other specialized knowledge will be permitted to testify at trial unless listed below. A summary of the expert's qualifications and a copy of his/her report must be provided for the Court's review at the pretrial conference. Said summary shall be read into the record at the time he/she takes the stand, and no opposing counsel shall be permitted to question his/her qualifications unless the basis of the objection is set forth herein.**

    **Plaintiff**

    1. Charlotte J. Word, Ph.D
       P.O. Box 35153
       Richmond, Virgnia 23235

    2. Tina M. Zottoli, Ph.D
       148 W121st Street, Unit 5
       New York, New York 10027

    **Defendants City of Newark and Det. Eutsey**

    None

#3931588

**Defendants Essex County Prosecutor's Office and AP Laurino**

None

11.    **PLAINTIFF'S DEPOSITION LIST (List, by page and line, all depositions testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)**

\* Plaintiff designates the testimony contained in the below excerpts, only, and not the objections made during the cited excerpts.

| Witness Name | Deposition Designations | Objections |
|---|---|---|
| Sheronda Atwell (if unavailable) | 7:7-9:9, 9:21-10:19, 13:4-17:14, 17:19-22, 18:16-20:4, 22:2-6, 22:9-11, 22:14-16, 22:20-23:25, 29:24-34:19, 39:1-40:8, 40:14-44:20, 45:7-9, 45:12, 45:16-19, 45:22-46:1, 46:13-51:8, 51:22-24, 52:2-9, 52:23-53:16, 54:3-8, 54:12-13, 54:15-18, 55:4-10, 55:19-25, 56:9, 56:14-57:7, 58:10-18, 59:7-60:24, 61:6-22, 62:2-25, 63:6-12, 63:18-23, 64:3-11, 64:17-18, 67:8-68:20, 69:1-70:13, 72:11-73:19, 75:5-21, 78:16-79:3, 86:-11-91:17, 93:3-18, 94:5-7, 94:20-23, 95:1-19, 97:19-22, 98:10-14, 98:20-99:13, 99:17-100:2, 101:2-10, 101:22-102:4, 102:23-103:1, 103:4, 103:12-23, 104:5-8, 104:19-105:1, 105:13-18, 105:21-108:16, 108:20-22, 109:6-110:25, 113:5-16, 113:18-114:14, 115:24-117:22, 118:2-13, 118:18-19, 118:21, 118:24-119:6, 119:9-120:1, 120:25-122:5, 123:13-25, 125:24-127:8, 127:12-17, 128:5-129:12, 129:17-21, 130:1-5, 130:13-23,131:13-132:16, 136:14-150:17, 150:23-152:18, 155:22-25, 156:9-162:2, 167:15-168:14, 169:2-8, 169:17-170:21, 170:23-173:7, 173:9-25, 174:18-175:16, 175:22-176:19, 176:21-179:15, 179:24-180:15, 183:23-184:12, 184:22-24, 185:1, 185:14-187:12, 207:9-15, 209:8-210:3, 210:23-211:9, 211:11-15, 216:9-10, 225:18-226:14, 231:6-17, 232:12-18, 240:3-241:11, 241:20-243:7, 243:8-11, 243:14-244:18, 245:21, 246:2-11, 246:16, 247:9-16, 247:19-248:7, 248:17-22, 249:16-250:3, 251:19-252:6, 252:9-12, 252:15, 253:24-254:8, 254:15-255:2, 255:10, 256:9-16, 261:6-11, 263:7-15, 264:12-265:9 | Newark/Eutsey:<br><br>ECPO/Laurino: |
| Derrick Eutsey, Defendant | 6:6-10:14, 11:1-12:3, 12:12-14:3, 14:9-16:25, 17:11-18:10, 18:21-19:15, 19:19-20:20, 21:17-21, 21:24-22:15, 23:3-25:6, 25:14-26:4, 26:15-28:15, 28:24-29:11, 29:15- | |

#3931588

| | |
|---|---|
| | 32:23, 33:13-36:4, 36:22-38:5, 38:9-39:25, 40:5-44:20, 45:3-9, 45:12-46:3, 46:6-48:6, 48:10-49:24, 50:11-52:2, 52:9-53:15, 53:21-54:7, 54:19-57:22, 58:60-60:25, 61:6-19, 61:23-62:19, 63:1-5, 63:9-66:10, 66:15-67:15, 67:19-24, 68:1-11, 68:13-69:5, 69:9-:17, 69:25-72:3, 72:7-15, 72:18-73:16, 73:19-75:13, 75:17-22, 76:3-14, 76:20-77:12, 77:17-78:7, 78:24-79:10, 79:25, 80:8-10, 80:14-23, 81:15-20, 81:25-82:13, 83:5-16, 83:18-20, 84:16-88:23, 91:19-23, 92:6-95:12, 96:7-97:25, 98:10-24, 103:7-25, 104:16-105:13, 105:21-108:9, 108:19-109:3, 109:8-10, 113-16-114:12, 115:6-116:1, 116:6-118:19, 122:12-123:10, 123:23-124:15, 127:20-128:17, 129:3-9, 130:10-133:16, 134:1-135:11, 135:20-137:10, 137:17-139:20, 140:2-141:12, 141:25-145:18, 148:11-149:18, 149:20, 149:22-150:3, 150:11-24, 151:1-152:4, 152:9-153:14, 155:8-14, 155:23-161:18, 161:21-162:9, 162:11-165:23, 166:15-17, 167:17-169:15, 169:20-171:17, 172:2-176:18, 176:21-178:17, 178:20-24, 179:2-180:20, 181:6-186:5, 186:11-188:18, 189:2-191:10, 191:14-25, 192:20-194:23, 196:4-201:1, 201:7-8, 201:15-202:17, 203:23-204:1, 204:8-9, 204:13-205:6, 205:16-206:7, 206:21-207:4, 207:7-10, 207:12-19, 207:23-209:4, 209:7-9, 209:19-210:11, 210:14-15, 211:6-12, 211:17-24, 212:11-213:19, 213:21-22, 213:25-214:24, 215:7-10, 215:13-17, 215:20-23, 217:1-6, 223:23-224:10, 225:3-5, 225:11-14, 225:22-227:11, 227:22-228:14, 228:24-229:20, 229:24-231:10, 231:18-233:13, 233:18-234:8, 235:1-236:3, 236:5-237:20, 237:23-238:5, 238:8-239:17, 239:19-240:2, 240:23-246:17, 247:1-249:20, 250:1-3, 250:7-12, 250:14-251:5, 251:7-13, 252:2-7, 252:10-254:12, 255:6-257:14, 258:12-259:1, 259:14-261:23, 262:3-10, 262:20-267:15, 267:19-268:24, 269:11-270:19, 271:16-274:18, 274:21-23, 275:1-280:6, 280:16-23, 283:10-285:3, 285:23-286:10, 293:14-294:1, 296:4-298:4, 300:2-15, 302:17-305:1. |
| Joseph Groller (if unavailable) | 5:1-15:8, 19:3-20:7, 22:5-27:14, 27:23-40:10, 41:4-42:5, 44:13-54:7, 56:23-58:5, 58:23-72:1, 73:6-98:18, 100:9-118:19, 118:24-122:18, 125:1-126:3, 126:14-159:12, 159:23-163:6, 163:17-165:15, 166:2-193:3, 194:4-195:11, 195:20-197:14, 201:21-202:6, 203:1-205:10, 205:15-206:1, 210:14-211:7 |
| Jack Clarkin (if unavailable) | 5:6-19:17, 20:11-36:10, 37:5-84:18, 85:5-125:11, 125:19-129:24, 130:6-138:20 |
| City of Newark by Darrin Marasco (30(b)(6) witness) | 5:6-24:23, 25:19-27:22, 28:5-60:17, 62:19-87:6 |

#3931588

| | |
|---|---|
| City of Newark by James Simpson (30(b)(6) witness) | 5:6-11:1, 12:9-27:5, 29:14-33:17, 34:3-43:17, 44:7-69:7, 70:17-71:8, 71:18-72:11 |
| City of Newark by Jose Da Silva (30(b)(6) witness) | 5:16-51:22, 52:10-60:22, 61:9-70:1, 70:14-71:12 |
| City of Newark by John Evangelista (30(b)(6) witness) | 5:10-12:1, 12:23-29:20, 37:7-42:14, 42:21-44:21, 45:4-45:22, 48:15-16, 49:21-53:3, 55:6-61:24, 62:12-17, 62:22-62:20, 65:8-112:18, 113:21-120:16, 124:1-141:13, 142:7-143:24, 144:25-152:12, 153:10-157:16, 159:12-160:7, 161:6-162:25, 163:13-22, 164:4-167:4, 168:1-171:2, 171:20-185:2, 185:11-186:13, 187:7-196:25, 197:12-15, 198:5-25, 200:9-211:11, 212:12-219:3, 223:11-224:12 |
| Michelle MacPhee | 6:5-9:10, 9:24-10:25, 11:15-23:23, 24:11-65:25, 69:9-19, 83:23-201:18, 202:7-203:10, 203:25-204:11, 204:16-19, 205:21-206:25 |
| John Douard (if unavailable) | 7:5-15:21, 16:8-33:13, 34:4-52:24, 57:16-61:20, 64:23-25, 66:16-67:6, 69:12-70:17, 70:25-71:22, 75:16-82:8, 83:23-84:8, 91:1-20, 96:9-118:20, 121:5-12, 123:17-20, 124:19-21, 125:1-6, 125:12-126:12, 126:19-21, 128:13-129:24, 130:15-134:5, 135:1-138:8, 138:18-139:25, 148:22-149:25, 152:12-155:8, 162:21-24, 163:3-165:22, 166:21-168:12 |
| Stephan Van Jura (if unavailable) | 9:6-65:24, 68:21-83:25, 85:24-115:10, 116:8-119:13, 120:13-121:20, 122:6-124:20, 132:11-15, 133:15-150:20, 151:3-5, 151:19-167:17, 176:4-177:3, 185:2-18, 189:20-191:;11, 192:21-193:17, 199:22-201:7, 208:13-209:4, 210:2-212:13, 213:3-216:5, 217:8-222:8, 224:21-226:22, 227:15-228:23, 236:9-238:24, 238:25-239:2, 244:20-247:18 |
| Robert D. Laurino, Defendant | 5:6-52:11, 52:18-56:12, 56:19-61:19, 62:23-63:22, 64:18-65:20, 66:4-74:23, 75:6-18, 75:25-76:19, 76:23-81:11, 81:20-84:1, 84:17-88:7, 91:8-123:25, 124:14-128:4, 128:174-132:23, 133:15-152:11, 153:18-162:19, 162:24-185:25, 186:20-200:20, 201:18-210:7, 210:25-247:20, 248:19-256:25, 257:16-264:16, 265:20-267:11 |
| Michele R. Bolan (if unavailable) | 6:5-18:22, 19:25-95:6, 97:1-123:22, 126:21-142:23, 145:20-148:6 |
| Clara M. Rodriguez (if unavailable) | 6:5-27:25, 28:7-53:24, 54:10-59:23, 63:3-80:22, 81:4-82:19, 83:15-86:11, 86:20-25, 87:6-94:20, 95:6-98:22, 99:3-183:16, 189:3-17, 191:3-204:15, 205:23-206:18, 207:7-208:22, 210:6-237:23, 238:1-242:19, 255:4-260:2, 260:24-262:4, 262:9-268:23, 269:7-275:12, 275:18-20, 276:12-14, 278:10-2:88:8, 288:15-291:5, 292:2-327:23, |

#3931588

| | 328:20-348:17, 349:10-353:5, 253:24-264:6, 365:2-372:16, 372:2-376:15, 378:3-8, 379:23-380:11, 380:25-388:7, 388:19-392:21, 394:9-395:16, 398:6-403:19, 404:9-407:20, 409:3-414:15, 417:20-437:21 | |
|---|---|---|
| Christine Witkowski (if unavailable) | Entire transcript | |
| Joseph Petersack (if unavailable) | Entire transcript | |
| Charles K. Williams (if unavailable) | Entire transcript | |
| Allison Lane (if unavailable) | Entire transcript | |
| Elliot C. Clark (if unavailable) | Entire transcript | |

12.    **DEFENDANTS' DEPOSITION LIST (List, by page and line, all depositions testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)**

**Defendants City of Newark and Det. Eutsey's Designations**

| Witness Name | Deposition Designations | Objections |
|---|---|---|
| Sheronda Atwell | 203:17-204:2, 204:19-205:14, 205:21-207:8, 221:9-11, 221:21-222:9, 222:20-25, 223:1-11, 223:19-224:1, 262:8-22 | **Plaintiff:** Irrelevant, hearsay, confusing, misleading, out-of-context, Speculation, badgering <br><br> **ECPO/Laurino:** |

***The Newark Defendants reserve the right to use the entire transcript of any witness that becomes unavailable and will make the appropriate application at the time of trial, if necessary.

* Should the Court permit the Newark defendants to do so, Plaintiff will make the appropriate objections to the Newark Defendants' proposed excerpts.

#3931588

**Defendants Essex County Prosecutor's Office and AP Laurino's Designations**

| Witness Name | Deposition Designations | Objections |
|---|---|---|
| | | Plaintiff: |
| | | Newark/Eutsey: |

ECPO Defendants reserve the right to use the entire transcript of any witness that becomes unavailable and will make the appropriate application at the time of trial, if necessary.

\* Should the Court permit the ECPO defendants to do so, Plaintiff will make the appropriate objections to the ECPO Defendants' proposed excerpts.

13. **PLAINTIFF'S EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibits as to which no such objection is made.)**

   **(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE JURY, SUFFICIENT COPIES SHOULD BE AVAJLABLE TO PROVIDE EACH JUROR WITH A COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED.)**

   A. Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit).

   B. Defendant objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection). *See attached Exhibit List. JDC*

14. **DEFENDANTS' EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibits as to which no such objection is made.)**

#3931588

**(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE JURY, SUFFICIENT COPIES SHOULD BE AVAJLABLE TO PROVIDE EACH JUROR WITH A COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED.)**

**Defendants City of Newark and Det. Eutsey**

A.  Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit).

B.  Plaintiff objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection). *See Attached Exhibit List. JBC*

**Defendants Essex County Prosecutor's Office and AP Laurino**

C.  Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit).

D.  Plaintiff objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection). *See Attached Exhibit List. JBC*

15.  **PLAINTIFF'S LEGAL ISSUES**

1.  Det. Eutsey initiated Roberts's prosecution without probable cause.

2.  Det. Eutsey fabricated material evidence which he forwarded to the prosecutor.

3.  Det. Eutsey failed to advise the prosecutor of material exculpatory evidence pertaining to the charges against Roberts.

4.  Det. Eutsey made false statements and omissions which created a falsehood in applying for the warrants.

5.  Det. Eutsey acted knowingly, deliberately, and with reckless disregard for the truth.

6.  The fabricated evidence resulted in the deprivation of Roberts's liberty.

7.  Det. Eutsey acted with malice pertaining to Roberts's prosecution.

8.  Det. Eutsey's actions resulted in the deprivation of Roberts's liberty.

9.  Det. Eutsey is not entitled to qualified immunity.

#3931588

10. Det. Eutsey is not entitled to good-faith immunity.

11. The City of Newark is vicariously liable for Det. Eutsey's conduct.

12. Roberts had a liberty interest in defending against the Civil Commitment proceedings to secure his release from civil confinement.

13. Roberts had a liberty interest in demonstrating his innocence with the exculpatory DNA evidence which the Newark Police Department preserved.

14. The City of Newark and its employees owed a duty of care to provide an accurate accounting of the evidence within its possession.

15. The City of Newark and its employees owed a duty of care not to mismanage evidence in its possession.

16. The City of Newark and its employees owed a duty of care to produce the complete sex crimes kit for testing.

17. The City of Newark had a policy and practice of separating positive samples from sex crimes kits and retaining those samples in its Forensic Laboratory.

18. Only those who worked within the Newark Police Forensic Laboratory knew of the policy and practice listed in No. 18, above, which delayed Roberts's exoneration.

19. The City of Newark violated Roberts's procedural due process rights.

20. The City of Newark is vicariously liable for the actions of its employees who breached the duties of care outlined above.

21. Laurino owed a duty of care to Roberts to provide accurate information regarding the nature and extent of the material which was submitted, and not submitted, for DNA testing.

22. Laurino owed a duty of care to Roberts to ensure that the Atwell buccal swab was submitted to the New Jersey State Police Laboratory for testing.

23. Laurino breached his duties of care to Roberts.

24. The Essex County Prosecutor's Office is vicariously liable for Laurino's negligence.

#3931588

16.    **DEFENDANTS' LEGAL ISSUES**

**Defendants City of Newark and Det. Eutsey**

1. There probable cause to prosecute Roberts.

2. There was no fabrication of evidence.

3. The City had no duty to preserve the specimens.

4. The City was not asked to provide the specimens until 2013.

**Defendants Essex County Prosecutor's Office and AP Laurino**

1. No actions/conduct by ECPO Defendants (i.e.,. ECPO entity and/or Laurino) rose to any such level that any legal obligation, directly or vicariously, was owed to Plaintiff.

2. No actions/conduct by ECPO Defendants (i.e.,. ECPO entity and/or Laurino) rose to any such level that any breach of any legal duty, directly or vicariously, resulted in any harm to Plaintiff.

3. No duty of care was owed by either the ECPO and/or Laurino to Plaintiff sounding in negligence.

4. Without conceding any such liability, Plaintiff has failed to delineate liability amongst multiple alleged tortfeasors; in other words, Plaintiff has failed to show that ECPO Defendants were the proximate cause of Plaintiff's harm.

5. ECPO Defendants' conduct all fall within the purview of qualified and/or absolute immunity.


17.    **MISCELLANEOUS (Set forth any other matters which require action by, or should be brought to the attention of, the Court.)**

**Plaintiff**

The parties were advised that the trial in this action would likely not begin until September. Plaintiff's counsel observes the Jewish holidays Rosh Hashana, Yom Kippur, and Sukkot, which will fall on October 2-4, 11-12, and 16-25, 2024. Accordingly, Plaintiff is requesting that the trial in this matter not begin until at least three weeks after the holidays conclude to provide ample time to complete final pretrial preparations and meet final pretrial deadlines.

#3931588

**Defendants City of Newark and Det. Eutsey**

n/a

**Defendants Essex County Prosecutor's Office and AP Laurino**

n/a

18. **JURY TRIALS – the following should be submitted to the Court no later than two (2) weeks prior to trial:**

A. Each side shall submit to the Judge and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7,2, with citations to authorities and arguments in support of its position on all disputed issues of law.

B. The parties shall confer and agree upon jury instructions and submit them to the Court with supporting authorizes on two separate computer discs in Microsoft Word format. The first disc will contain the agreed-upon instructions, and the second disc will contain disputed instructions with the parties' alternative proposals.

C. If any hypothetical questions are to be put to an expert witness on direct examination, these shall be submitted to the Judge and to opposing counsel.

D. Counsel shall jointly submit to the Court a single set of proposed voir dire questions as to which the parties are in agreement, not to exceed 30 questions.

E. Counsel shall jointly submit to the Court a single proposed special verdict sheet on a computer disc in Microsoft Word format.

F. The parties shall prepare a joint trial exhibit list containing a description of all exhibits that is divided into two sections. The first section will identify the exhibits for which no objection has been raised, and the second section shall list those exhibits for which one of the parties has made an objection, The exhibits themselves are to be premarked and must include exhibit stickers. The parties must prepare a copy of all exhibits that they expect to use at trial for the Judge, Court Reporter, and opposing counsel.

19. **NON-JURY TRIALS** (n/a)

#3931588

20.    **TRIAL COUNSEL** (List the names of trial counsel for all parties.)

**Plaintiff**

Mirel Fisch
The Law Office of Mirel Fisch
2329 Nostrand Ave, Suite 100
Brooklyn, New York 11210

Dennis J. Kelly
Kelly & Grossman, LLP
1248 Montauk Highway
West Islip, New York 11795

**Defendants City of Newark and Det. Eutsey**

Gary S. Lipshutz, Esq.
First Assistant Corporation Counsel
Emilia Perez, Esq.
Chief of Litigation
Newark Law Department
920 Broad Street
Newark NJ 07102

**Defendants Essex County Prosecutor's Office and AP Laurino**

Alice M. Bergen
Adrien Moncur
Decotis, Fitzpatrick, Cole & Giblin, LLLP
61 South Paramus Road, Suite 250
Paramus, New Jersey 07652

21.    **BIFURCATION** (Where appropriate, the issues relating to liability shall be severed and tried to verdict. Thereafter, all issues relating to damages shall be tried. The issues of liability and damages ~~SHALL~~/**SHALL NOT** be tried separately.)

22.    **ESTIMATE LENGTH OF TRIAL**

Plaintiff anticipates that his case will take approximately 18 trial days.

Defendants City of Newark and Det. Eutsey anticipate that their case will collectively take 4 trial days.

46

#3931588

Defendants Essex County Prosecutor's Office and AP Laurino anticipate that their case will collectively take 2 trial days.

AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY FROM TIME TO TIME SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.

s/Mirel Fisch

Mirel Fisch
The Law Office of Mirel Fisch
*Attorneys for Plaintiffs*
2329 Nostrand Ave, Suite 100
Brooklyn, New York 11210

s/Emilia Perez

Emilia Perez, Esq.,
Gary Lipshutz, Esq.,
City of Newark Department of Law
*Attorneys for Defendants City of Newark and Derrick Eutsey*
920 Broad Street
Newark, New Jersey 07102

s/Alice M. Bergen

Alice M. Bergen
Decotiis, Fitzpatrick, Cole & Giblin, LLP
*Attorneys for Defendants Essex County Prosecutor's Office and Robert Laurino*
61 South Paramus Road, Suite 250
Paramus, New York 07652

Hon. James. B. Clark, U.S.M.J.

Dated: September 17, 2024

47

## PLAINTIFF'S EXHIBIT LIST

\* Plaintiff will be seeking to use copies of the below exhibits, to the extent the exhibits are stipulated to or deemed admissible, which were previously marked during depositions in this matter.

\*\* Plaintiff will be seeking to redact all references to his prior criminal history in the below exhibits, some of which are already indicated below.

\*\* The City Defendants do not object to Plaintiff's exhibits on the ground of authenticity. Whether a particular exhibit is admissible at trial depends upon relevance and foundation, cumulative, and potential hearsay issues, which cannot be set forth at this time.

\*\*Therefore, the City Defendants will object based on the following grounds contained in the answer below:
1. Relevance
2. Foundation
3. Hearsay
4. Cumulative
5. Unduly prejudicial
6. Misleading
7. Confusing the issues
8. Improper impeachment evidence

| Exhibit Description | Offer | Admit | Objections |
|---|---|---|---|
| 1. NPD Incident Report, dated May 8, 1996 | | x | |
| 2. United Hospitals Medical Center Rape Evidence Kit Release, dated May 9, 1996 | x | | 2, 3 |
| 3. NPD Continuation Report, dated May 8, 1996 [redaction re prior criminal history] | | x | |
| 4. Municipal Court Case Inquiry Results | x | | 1, 2, 3, 4, 7 |
| 5. Warrants, dated May 16-17, 1996 | | x | |
| 6. Charges, undated | | x | |
| 7. NPD Statement Form, dated May 14, 1996 | | x | |
| 8. NPD Property and Evidence Receipt - photo, dated May 22, 1996 | | x | |

#3931588

| 9. | NPD Property and Evidence Receipt – rape kit, dated May 29, 1996 | | x | |
|---|---|---|---|---|
| 10. | NPD Serology Report and Certificate of Analysis, dated July 18, 1996 | | x | |
| 11. | ECPO Request to Recommend Disposition, dated July 15, 1996 | | x | |
| 12. | Transcript of Plea Hearing, dated July 16, 1996 | | x | |
| 13. | Multiple Charges Sheet | | x | |
| 14. | Transcript of Sentencing, dated Oct. 17, 1996 [redaction re prior criminal history] | | x | |
| 15. | Judgment of Conviction, dated Oct. 17, 1996 | | x | |
| 16. | Criminal Action Order – vacating conviction, dated Nov. 21, 2013 | x | | 1, 2, 3, 5, 6, 7, 8 |
| 17. | Notice of Motion Seeking a Speedy Trial, dated Dec. 19, 2013 | x | | 1, 2, 3, 5, 6, 7, 8 |
| 18. | Judgment of Dismissal, dated Feb. 20, 2014 | x | | 1, 2, 3, 5, 6, 7, 8 |
| 19. | Civil Action Order dismissing civil commitment Petition, dated Mar. 10, 2014 | x | | 1, 2, 3, 5, 6, 7, 8 |
| 20. | PBIS Inmate Summary Report [redaction re prior criminal history] | x | | 8 |
| 21. | Parole Board Notice of Decision, dated Nov. 19, 1996 [redaction re prior criminal history] | x | | 1, 2, 3, 5, 6, 7, 8 |
| 22. | Order denying motion to reduce sentence, dated May 17, 1999 | x | | 2, 5, 6,7 ,8 |
| 23. | Letter from Parole Board to Roberts re Appeal of Parole Denial, dated Dec. 4, 2000 | x | | 1, 3, 6,7,8 |
| 24. | Notice of Motion to Withdraw Plea of Guilty, dated Jan. 8, 2001 | x | | 1, 5, 6, 7, 8 |
| 25. | Order on Motion to Withdraw Guilty Plea, dated Jan. 18, 2001 | x | | 1,3, 5, 6, 7, 8 |
| 26. | Letter from Judge Codey to Roberts, dated Aug. 30, 2001 | | x | |

#3931588

| 27. | Letter from Parole Board to Roberts re Appeal of Parole Denial, dated Oct. 29, 2003 | x | | 1, 2,3, 5, 6, 7, 8 |
|---|---|---|---|---|
| 28. | Order on Motion to Correct Pre-Sentence Report, dated Jan. 16, 2004 | x | | 1, 2,3, 5, 6, 7, 8 |
| 29. | Roberts Parole Exit Photos, dated Feb. 4, 2004 | x | | 1, 2, 6, 7 |
| 30. | Roberts Paralegal Diploma and Student Transcript, dated May 4, 2004 | x | | 1, 6 |
| 31. | Petition for Civil Commitment, dated May 18, 2004 [redaction re prior criminal history] | x | | 1, 3, 4, 5, 6, 7, 8 |
| 32. | Douard brief in opp'n to Civil Commitment, dated May 24, 2004 [redaction re prior criminal history] [as necessary to refresh recollection] | x | | 1, 3, 5, 6, 7 |
| 33. | Transcript of Probable Cause Hearing, dated May 26, 2004 [redaction re prior criminal history] | x | | 1, 3, 5, 6, 7, 8 |
| 34. | Order for Temporary Civil Commitment, dated May 27, 2004 | x | | 1, 3, 5, 6, 7, 8 |
| 35. | AG letter to ECPO re Civil Commitment, dated May 27, 2004 | x | | 1, 2, 3,6, 8 |
| 36. | Douard brief in support of motion to dismiss to Civil Commitment, dated Sept. 13, 2004 [redaction re prior criminal history] [as necessary to refresh recollection] | x | | 1, 3, 5, 6, 7, 8 |
| 37. | Transcript of Proceedings – CC, dated Dec. 9, 2004 [redaction re prior criminal history] | x | | 1, 3, 5, 6, 7, 8 |
| 38. | Transcript of Proceedings – CC, dated Jan. 19, 2006 [redaction re prior criminal history] | x | | 1, 3, 5, 6, 7, 8 |
| 39. | Judgement - CC, dated Jan. 25, 2006 | x | | 1,8 |
| 40. | Judgement - CC, dated May 5, 2009 | x | | 1, 8 |

50

| | | | | |
|---|---|---|---|---|
| 41. | Letter from Public Defender to Avenel Special Treatment Unit, dated Mar. 22, 2012 | x | | 1, 2, 3,5, 6, 7 |
| 42. | Letter from Public Defender to Avenel Special Treatment Unit, dated Apr. 19, 2012 | x | | 1, 2, 3, 5, 6, 7 |
| 43. | Special Treatment Unit Annual Review Report Addendum, dated Apr. 19, 2012 [redaction re prior criminal history] | x | | 1, 8 |
| 44. | Petition for Accelerated Review Hearing, dated Jan. 6, 2014 | x | | 1, 3, 5,6, 7 |
| 45. | DOC letter to ECPO, dated Mar. 11, 2014 | x | | 1, 2, 3, 5, 6,7 |
| 46. | Douard Certification, dated Nov. 16, 2011 | x | | 1, 2, 3, 5, 6,7 |
| 47. | Atwell Statement, dated Sept. 27, 2005 | x | | 1, 2, 3, 5, 6, 7, 8 |
| 48. | Atwell Certification, dated June 22, 2007 | x | | 1, 2, 3, 5, 6, 7, 8 |
| 49. | Atwell Statement, dated Sept. 5, 2018 | x | | 1, 2, 3, 5, 6, 7, 8 |
| 50. | Audio recording of Leake/Atwell interview, Sept. 5, 2018 | x | | 1, 2, 3, 4, 5, 6, 7, 8 |
| 51. | Binder containing photographs of sex crimes kit and related items taken at ECPO on Nov. 17, 2017 – to be sub-marked individually | | x | |
| 52. | Binder containing NJSP Lab subpoena response – to be sub-marked individually | | x | |
| 53. | NJSP Communication Log, printed Aug. 9, 2018 | | x | |
| 54. | Douard letter to Roberts, dated Dec. 13, 2004 | x | | 1, 2, 3, 4, 5, 6, 7, 8 |
| 55. | Douard letter to Laurino, dated Dec. 17, 2004 | x | | 1, 2, 3, 4, 5, 6, 7, 8 |
| 56. | ECPO Chain of Custody Report | x | | 1 |
| 57. | Facsimile from Bolan to Douard with Roberts Consent for the Taking of Certain Body Samples, dated Mar. 10, 2005 | | x | |
| 58. | Atwell Consent for the Taking of Certain Body Samples, dated Sept. 12, 2005 | | x | |

#3931588

| | | | |
|---|---|---|---|
| 59. | ECPO S.A.R.A. Unit report by Bolan, dated Sept. 12, 2005 | | x | |
| 60. | Laurino letter to Douard, dated Oct. 6, 2005 | | x | |
| 61. | ECPO Continuation Reports (2), dated Nov. 25, 2009 | | x | |
| 62. | Facsimile from Bolan to Rodriguez with OFS Evidence Receipt, dated Dec. 3, 2009 | | x | |
| 63. | Facsimile from OFS to ECPO with DNA Lab Report, dated Feb. 1, 2010 | | x | |
| 64. | ECPO Evidence Receipt, dated June 10, 2013 | | x | |
| 65. | Generic manilla file folder | | x | |
| 66. | Pastacaldi Memorandum, dated July 12, 2013 | x | | 1, 2, 3, 4, 5, 6, 7,8 |
| 67. | Motion for DNA testing, dated July 27, 2013 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 68. | OFS Evidence Receipt, dated Sept. 18, 2013 | | x | |
| 69. | Notice of Motion Seeking Post Conviction Relief, dated Feb. 15, 2006 | x | | 1, 6, 7 |
| 70. | Roberts letter enclosing motion resubmission, dated Mar. 17, 2006 | | x | |
| 71. | Orders denying PCR motion, dated Apr. 17/24, 2006 | | x | |
| 72. | App. Div. decision, dated May 22, 2007 | | x | |
| 73. | Van Jura PCR Supp. Brief, dated June 25, 2007 | | x | |
| 74. | Rodriguez PCR Opp'n, dated July 23, 2007 | | x | |
| 75. | Transcript of Proceedings – PCR, dated July 26, 2007 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 76. | Decision denying PCR, dated July 30, 2007 | x | | 1, 3, 4, 5, 6, 7,8 |
| 77. | App. Div. decision, dated July 17, 2009 | x | | 1, 4, 5, 6, 7, 8 |
| 78. | Transcript of Proceedings – PCR, dated Oct. 27, 2009 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 79. | Transcript of Proceedings – PCR, dated Apr. 27, 2010 | x | | 1, 3, 4, 5, 6, 7, 8 |

#3931588

| | | | | |
|---|---|---|---|---|
| 80. | Decision denying PCR, dated May 19, 2010 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 81. | App. Div. decision, dated Mar. 8, 2013 | x | | 1, 4, 5, 6, 7, 8 |
| 82. | Transcript of Hearing – PCR, dated May 16, 2013 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 83. | Transcript of Hearing – PCR, dated June 17, 2013 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 84. | Transcript of Hearing – PCR, dated July 16, 2013 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 85. | Transcript of Hearing – PCR, dated Aug. 14, 2013 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 86. | Transcript of Hearing – PCR, dated Sept. 26, 2013 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 87. | Transcript of Hearing – PCR, dated Nov. 20, 2013 | x | | 1, 3, 4, 5, 6, 7, 8 |
| 88. | Memorandum and emails from Douard, dated May 22, 2007 [as necessary to refresh recollection] | x | | 1, 2, 3, 4, 5, 6, 7, 8 |
| 89. | Emails from/to Douard and Van Jura, dated June 5, 2007 | x | | 1, 2, 3, 4, 5, 6, 7, 8 |
| 90. | Letter from Roberts to Van Jura, dated June 1, 2007 [as necessary to refresh recollection] | x | | 1,7 |
| 91. | Email from Zangari to Rodriguez, dated May 17, 2010 | | x | |
| 92. | Letter from Rodriguez to Codey, dated May 18, 2010 | | x | |
| 93. | Emails from/to Witkowski/Rodriguez, dated June 10, 2013 | | x | |
| 94. | Email from Witkowski to Rodriguez with Continuation Report, dated June 13, 2013 | | x | |
| 95. | Emails from/to Van Jura and Price, dated June 5/18, 2007 | x | | 1, 3, 5, 6, 7, 8 |
| 96. | Facsimile from Van Jura to Price with draft certification, dated June 18, 2007 | x | | 1, 3, 5, 6, 7, 8 |
| 97. | Email from Price to Van Jura with Atwell Certification and related docs, dated June 22, 2007 | x | | 1, 3, 5, 6, 7, 8 |
| 98. | Letter from Roberts to Van Jura, dated Nov. 10, 2009 [as necessary to refresh recollection] | x | | 1, 3, 5, 6, 7 |

#3931588

| | | | |
|---|---|---|---|
| 99. Letter from Van Jura to Roberts, dated Nov. 16, 2010 [as necessary to refresh recollection] | | x | |
| 100. Emails from/to Rodriguez/Laurino, dated Apr. 19, 2010 | | x | |
| 101. Emails from/to Rodriguez/Rosenkrans, dated May 14, 2013 | | x | |
| 102. Emails from/to Rodriguez, dated May 30-31, 2013 | | x | |
| 103. Emails from Rodriguez/Straccamore, dated May 31, 2013 | | x | |
| 104. Emails from/to Rodriguez/Stolarz, dated May 31/June 3, 2013 | | x | |
| 105. Emails from/to Rodriguez/Stolarz, dated Aug. 16, 2013 | | x | |
| 106. Emails from/to Witkowski/Rodriguez, dated Sept. 16, 2013 | | x | |
| 107. Emails from/to Rosenkranz/Rodriguez, dated Nov. 12, 2013 | | x | |
| 108. Emails from/to Laurino/Rodriguez, dated Nov. 21, 2013 | | x | |
| 109. Groller Resume | | x | |
| 110. MacPhee Transfer Records [as necessary to refresh recollection] | x | | 1 |
| 111. MacPhee handwritten transfer notes [as necessary to refresh recollection] | x | | 1 |
| 112. Van Jura Resume [as necessary to refresh recollection] | | x | |
| 113. Laurino Resume | | x | |
| 114. Bolan Resume [as necessary to refresh recollection] | | x | |
| 115. Williams CV [as necessary to refresh recollection] | | x | |
| 116. Lane CV [as necessary to refresh recollection] | | x | |
| 117. Clark CV [as necessary to refresh recollection] | | x | |

#3931588

| | | | |
|---|---|---|---|
| 118. Division of Criminal Justice – The Property and Evidence Function, dated Oct. 1989 | | x | |
| 119. Attorney General Standards to Ensure the Rights of Crime Victims, dated Apr. 28, 1993 | | x | |
| 120. Attorney General Guidelines for the Retention of Evidence, dated Mar. 9, 2010 | | x | |
| 121. NPD General Order No. 64-20 – Revised Records Retention Schedule, dated July 3, 1957 | | x | |
| 122. NPD Memorandum re Records Destruction Procedure, dated Dec. 11, 1974 | | x | |
| 123. NPD General Order No. 64-2 – Property and Evidence Packing and Storage:<br>A. dated Nov. 25, 1996<br>B. dated Apr. 14, 1997<br>C. dated Aug. 31, 2000<br>D. dated Nov. 1, 2005<br>E. dated Feb. 10, 2014 | | x | |
| 124. NPD General Order No. 65-9 – Procedures for Sex Offense Cases Requiring a Medical Examination:<br>A. dated Apr. 26, 1965<br>B. dated Apr. 26, 2005<br>C. dated July 14, 2009 | | x | |
| 125. NPD General Order No. 89-1 – Crime Victims Information Process, dated Feb. 22, 1989 | | x | |
| 126. NPD General Order No. 2000-02 – Property and Evidence Management, dated July 7, 2000 | | x | |
| 127. NPD General Order No. 04-07 – DNA Evidence, dated Aug. 20, 2004 | | x | |
| 128. Certification of James Simpson, dated Sept. 22, 2017 | | x | |
| 129. Administrative Submission of Lt. Clarkin, dated Sept. 25, 2017 | | x | |
| 130. Certification of Lt. Clarkin, dated Jan. 12, 2018 | | x | |

#3931588

| | | | |
|---|---|---|---|
| 131. Amended Certification of Lt. Clarkin, dated Jan. 30, 2018 | | x | |
| 132. Certification of Lt. Evangelista, undated | | x | |
| 133. Amended Certification of Lt. Evangelista, dated Jan. 29, 2018 | | x | |
| 134. Certification of Lt. Johns, dated Jan. 30, 2018 | | x | |
| 135. Clarkin Property and Evidence Room outline | | x | |
| 136. Generic slip-cover | | x | |
| 137. Plaintiff's First Request for the Production of Documents to Newark and Eutsey, dated Nov. 17, 2016 | | x | |
| 138. Plaintiff's Second Request for the Production of Documents to Newark and Eutsey, dated Feb. 21, 2017 | | x | |
| 139. Plaintiff's Interrogatories to Newark/Eutsey, dated Feb. 21, 2017 | | x | |
| 140. Newark's Answers to Plaintiff's First and Second Requests for the Production of Documents, and Answers to Plaintiff's Demand for Answers to Interrogatories, dated May 23, 2017 | | x | |
| 141. Newark's Amended Answers to Plaintiff's Demand for Answers to Interrogatories, dated Sept. 26, 2017 | | x | |
| 142. Plaintiff and Newark/Eutsey's Joint discovery dispute letter as to Plaintiff's first document demand to Newark/Eutsey, dated Sept. 28, 2017 | | x | |
| 143. Plaintiff and Newark/Eutsey's Joint discovery dispute letter as to Plaintiff's first request for interrogatories to Newark/Eutsey, dated Sept. 28, 2017 | | x | |

#3931588

| | | | |
|---|---|---|---|
| 144. Transcript of Teleconference before the Hon. James B. Clark, III, USMJ, dated Oct. 17, 2017 | x | | 1, 3, 5, 6, 7, 8 |
| 145. Letter from Perez, dated Jan. 16, 2018 | x | | 1, 6, 7 |
| 146. Letter from Perez, dated Jan. 17, 2018 | x | | 1, 6, 7 |
| 147. Plaintiff's Third Request for the Production of Documents to Newark and Eutsey, dated Mar. 4, 2019 | | x | |
| 148. Plaintiff's Fourth Request for the Production of Documents to Newark and Eutsey, dated Apr. 12, 2019 | | x | |
| 149. Defendant's Response to Plaintiff's Third Notice to Produce, dated Feb. 18, 2020 | | x | |
| 150. Defendant's Response to Plaintiff's Fourth Notice to Produce, dated Feb. 18, 2020 | | x | |
| 151. Email from Lipshutz, dated July 25, 2020 | x | | 1, 6, 7 |
| 152. Newark's Response to Plaintiff's Third Notice to Produce (Amended), dated Aug. 30, 2020 | | x | |
| 153. Notice to Depose City of Newark Pursuant to Fed. R. Civ. P. 30(b)(6), dated Jan. 26, 2018 | | x | |
| 154. Letter from Newark identifying 30(b)(6) witnesses, dated Feb. 15, 2018 | | x | |
| 155. State Defendants' Response to Plaintiff's Interrogatories, dated May 11, 2017 | | x | |
| 156. N.J.S.A 2A:84A-32a in effect as of 2001 | | x | |
| 157. N.J.S.A 2A:84A-32a 2015 Amendment | | x | |
| 158. Expert Report by Tina M. Zottoli, Ph.D | x | | 1, 2, 3, 4, 5, 6, 7, 8 |
| 159. Expert Report by Charlotte J. Word, Ph.D | x | | 1, 2, 3, 4, 5, 6, 7, 8 |
| 160. Deposition of Rodney Roberts, dated Feb. 21, 2019 [as necessary to refresh recollection] | x | | |

#3931588

| | | | |
|---|---|---|---|
| 161. Deposition of Sheronda Atwell, dated July 17, 2019 [as necessary to refresh recollection] | x | | |
| 162. Deposition of Joseph Groller, dated Mar. 22, 2019 [as necessary to refresh recollection] | x | | |
| 163. Deposition of Derrick Eutsey, dated Mar. 25, 2019 [as necessary to refresh recollection] | x | | |
| 164. Deposition of Jack J. Clarkin, dated Feb. 21, 2018 [as necessary to refresh recollection] | x | | |
| 165. Deposition of Darrin Marasco, dated Feb. 22, 2018 [as necessary to refresh recollection] | x | | |
| 166. Deposition of James Simpson, dated Feb. 22, 2018 [as necessary to refresh recollection] | x | | |
| 167. Deposition of Jose A. Da Silva, dated Feb. 22, 2018 [as necessary to refresh recollection] | x | | |
| 168. Deposition of John Evangelista, Pt 1, dated Feb. 21, 2018 [as necessary to refresh recollection] | x | | |
| 169. Deposition of John Evangelista, Pt 2, dated Aug. 7, 2018 [as necessary to refresh recollection] | x | | |
| 170. Deposition of Michelle MacPhee, dated July 26, 2018 [as necessary to refresh recollection] | x | | |
| 171. Deposition of John Douard, Esq, dated March 18, 2018 [as necessary to refresh recollection] | x | | |
| 172. Deposition of Stefan Van Jura, dated Mar. 28, 2019 [as necessary to refresh recollection] | x | | |
| 173. Deposition of Charles K. Williams, dated Aug. 2, 2018 [as necessary to refresh recollection] | x | | |
| 174. Deposition of Allison Lane, dated Aug. 2, 2018 [as necessary to refresh recollection] | x | | |
| 175. Deposition of Elliot C. Clark, Pt 1, dated Aug. 9, 2018 [as necessary to refresh recollection] | x | | |

#3931588

| | Offer | Admit | |
|---|---|---|---|
| 176. Deposition of Elliot C. Clark, Pt 2, dated Oct. 4, 2018 [as necessary to refresh recollection] | x | | |
| 177. Deposition of Joseph R. Petersack, Pt 1, dated Oct. 4, 2018 [as necessary to refresh recollection] | x | | |
| 178. Deposition of Joseph R. Petersack, Pt 2, dated Feb. 22, 2019 [as necessary to refresh recollection] | x | | |
| 179. Deposition of Robert D. Laurino, dated Mar. 15, 2018 [as necessary to refresh recollection] | x | | |
| 180. Deposition of Michele R. Bolan, dated Mar. 12, 2018 [as necessary to refresh recollection] | x | | |
| 181. Deposition of Clara M. Rodriguez, Pt 1, dated Mar. 8, 2018 [as necessary to refresh recollection] | x | | |
| 182. Deposition of Clara M. Rodriguez, Pt 2, dated Mar. 9, 2018 [as necessary to refresh recollection] | x | | |
| 183. Deposition of Christine Witkowski, dated Mar. 12, 2018 [as necessary to refresh recollection] | x | | |

## DEFENDANTS CITY OF NEWARK AND DERRICK EUTSEY'S EXHIBIT LIST

| Exhibit Description | Offer | Admit | Objections |
|---|---|---|---|
| 1. Roberts 2018 Criminal Conviction | | | Irrelevant, unduly prejudicial, misleading, improper impeachment evidence |
| 2. Incident and continuation Reports of 1986 Rape | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 3. Property and Evidence Receipt for stolen vehicle dated January 31, 1986 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |

#3931588

| 4. | Certificate of Analysis, dated March 3, 1986 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
|---|---|---|---|---|
| 5. | Arrest Report of 1986 Rape | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 6. | 10 Counts Indictment, dated January 29, 1986 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 7. | Judgment of Conviction, dated April 24, 1986 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 8. | 1986 Jury Verdict | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 9. | Judgment of Conviction of adjudication by guilty plea, dated June 12, 1996 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 10. | Judgment of Conviction of adjudication by guilty plea, dated July 16, 1996 | | | The document Defendants attached contain the Adult Presentence Report at the back end, which is not part of the Judgment of Conviction. As to that document - hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 11. | Adult Pre Sentence Report, dated July 10, 1986 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |

#3931588

| | | | |
|---|---|---|---|
| 12. | Letter from Roberts to Carmichael, dated December 10, 2008 | | Plaintiff does not know what document this refers to and Newark did not produce it for examination. Accordingly, Plaintiff objects to its admission on that basis. Additionally, to the extent applicable, Plaintiff objects on the basis of hearsay, relevance, improper impeachment, confusing or misleading, unduly prejudicial, no basis of knowledge |
| 13. | Pre-Sentence Report for Edward Tellis-Codefendant 1986 Rape | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 14. | Letter from ECPO, Dated January 23, 2001 and attached order denying Robert's motion for Withdrawal of guilty plea | | No objection to the order. As to the letter - Plaintiff does not know what document this refers to and Newark did not produce it for examination (Plaintiff located a January 23, 2001 letter from ECPO but it does not reference any annexed order). Accordingly, Plaintiff objects to its admission on that basis. Additionally, to the extent applicable, Plaintiff objects on the basis of hearsay, relevance, improper impeachment, confusing or misleading, unduly prejudicial, no basis of knowledge |
| 15. | Criminal Complaint for Theft, dated February 2019 for Roberts | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 16. | Charge Disposition data sheets for Roberts and Tellis | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 17. | Indictment Possession Data Sheets for Roberts and Tellis | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 18. | January 9, 1987 charges and deposition for theft and possession of a starter pistol | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |

#3931588

| 19. | June 27, 1986 Disposition Report | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
|---|---|---|---|---|
| 20. | June 30, 1986, Disposition Report | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 21. | Transcript of Proceeding of April 11, 1986 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 22. | ECPO Letter to Mr. Menchin From Vincent Nuzzi | | | Plaintiff does not know what document this refers to and Newark did not produce it for examination. Accordingly, Plaintiff objects to its admission on that basis. Additionally, to the extent applicable, Plaintiff objects on the basis of hearsay, relevance, improper impeachment, confusing or misleading, unduly prejudicial, no basis of knowledge |
| 23. | Letter to Ms Linda Dunn from JohnMcMahon, dated June 13, 1997 | | | Hearsay, relevance, improper impeachment, confusing or misleading, unduly prejudicial, no basis of knowledge |
| 24. | Order denying Motion for a New Trial | | | Plaintiff does not know what document this refers to and Newark did not produce it for examination. Accordingly, Plaintiff objects to its admission on that basis. Additionally, to the extent applicable, Plaintiff objects on the basis of hearsay, relevance, improper impeachment, confusing or misleading, unduly prejudicial, no basis of knowledge |
| 25. | Essex Appeal Data Sheet, dated December 16, 1986 | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 26. | Essex Appeal Data Sheets, dated December 2, 1986 for Edward Tellis | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |

#3931588

| | | | |
|---|---|---|---|
| 27. | Essex Appeal Data Sheets, dated December 2, 1986 for Roberts | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 28. | Petit Jury List | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 29. | Jury Verdict for Edward Tellis | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 30. | Request for Criminal Records for Roberts | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 31. | Request for Criminal Edward Tellis | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 32. | Criminal Arraignment Order | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 33. | Criminal History Summary Record | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 34. | SARA Pre-Grand Jury Internal Report | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 35. | Edward Telli's Disposition | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 36. | Rodney Roberts Disposition | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |

#3931588

| | | | | |
|---|---|---|---|---|
| 37. | Receipt and Request for Discovery for Roberts | | | Plaintiff does not know what document this refers to (if it pertains to discovery in this civil action, or discovery in any underlying criminal proceeding—1986, 1996, or otherwise) and Newark did not produce it for examination. Accordingly, Plaintiff objects to its admission on that basis. Additionally, to the extent applicable, Plaintiff objects on the basis of hearsay, relevance, improper impeachment, confusing or misleading, unduly prejudicial, no basis of knowledge |
| 38. | Post Indictment Disposition Form Roberts | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 39. | Post Indictment Disposition Form Tellis | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 40. | County Disposition Report Roberts | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 41. | County Disposition Report Tellis | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 42. | Victim Witness Locator Form Tellis | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 43. | Victim Witness Locator Form Roberts | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 44. | Letter from Janice Daniels to Herbert Tate, dated December 12, 1986 regarding Tellis | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |

#3931588

| 45. | Complaint for Theft against Robert | | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
|---|---|---|---|---|
| 46. | AG Guidelines on the retention of DNA Evidence, dated March 9, 2010 | | | |
| 47. | Plaintiff's discovery responses (Answers to Interrogatories) | | | Plaintiff does not know if this refers to answers to requests by the Newark Defendants or other defendants in this matter. To the extent this refers to discovery requests pertaining to other defendants, Plaintiff objects on the basis of relevance, misleading and confusing the issues, prejudice |
| 48. | Defendants will also seek to use some of the exhibits identified by Plaintiff and Co-Defendant. At this time, the Newark Defendants does not feel that it is necessary to re-list all the exhibits to avoid redundancy; however, it will do so if the court feels that it is necessary. | | | |
| 49. | Property and Evidence Log Book Excerpts | | | If this refers to the singular Property and Evidence logbook excerpt from 1996 – relevance, lack of foundation, misleading, confusing. Since no additional log book excerpts were produced during discovery, Plaintiff objects to the introduction of any additional excerpts on that basis, and on the basis of relevance, foundation, authentication, confusing or misleading |
| 50. | Newark Police Crime Lab Reports, dated July 18, 1996 | | | |

#3931588

| 51. | Transcript of all depositions of any witness, parties, and experts deposed in this matter | | | No objection for use to refresh recollection or for impeachment, as necessary. Otherwise, depending on witness transcript or excerpts are proposed – hearsay, irrelevant, improper impeachment, confusing the issues, misleading, no basis of knowledge, improper form |
|---|---|---|---|---|
| 52. | Copy of brown manila envelope with the cutoff DNA tips | | | |
| 53. | Copy of white envelope containing Sharonda Atwell's saliva/buccal swab sample | | | |
| 54. | Photographs of white envelope containing the missing DNA materials | | | |
| 55. | Evidence Receipt, dated March 22, 2005 for Sexual Assault Evidence Collection Kit and envelope with buccal swab delivered to the State Police by Edward Schneider | | | |
| 56. | Forensic Laboratory Communication Log, dated April 14, 2005 | | | |
| 57. | Forensic Laboratory Communication Log, dated July 26, 2005 | | | |
| 58. | DNA Report of Robert's buccal swab and Atwell's vaginal swabs, dated August 29, 2005 from Elliot Clark noting the results of DNA Analysis | | | |
| 59. | ECPO Emails between Jannine Straccamore and Lieutenant regarding the destruction of SA kits, dated May 30, 2013 and May 31, 2013 | | | |
| 60. | Lab Report of Charles Williams, dated April 11, 2005 | | | |
| 61. | Sharonda Atwell's statement from May 14, 1996 | | | |
| 62. | Appellate Division Opinion of July 17, 2009 on the dismissal of Roberts's Petition for PCR | | | |

#3931588

| | | | |
|---|---|---|---|
| 63. | Appellate Division Opinion of March 8, 2013 on the denial of Roberts's Petition for PCR | | |
| 64. | Emails from and to Witkowski/Stolarz, dated June 3, 2013 requesting help searching for rape kit | | |
| 65. | Letter from Van Jura to Roberts, dated Nov. 16, 2009 | | |
| 66. | Order dismissing petition for commitment, dated March 10, 2014 | | |
| 67. | Letter from Judge Codey to Roberts, dated April 17, 2006 | | |
| 68. | DNA Lab Report, dated December 30, 2013 | | |
| 69. | Post-Conviction Relief Order Assigning Counsel | | |
| 70. | Emails between Joann Van Pelt, Price and Van Jura dated between June 1 2007 June 18, 2007 | | |
| 71. | NPF Records and Identification Bureau arrest records for Roberts | | Hearsay, irrelevant, unduly prejudicial, misleading, confusing the issues, improper impeachment evidence |
| 72. | Plaintiff's 30(b)(6) notice | | |
| 73. | N.J.S.A. 2A:84A-32a Post Conviction DNA Testing | | |
| 74. | Judge Codey's Opinion, dated July 30, 2007 | | |
| 75. | Responses to request for admissions by the City or any party to this case | | As to the City's responses to requests for admissions – no objection to the admission as to Request No. 5. As to the remaining denials – hearsay, mischaracterizes the evidence, no basis of knowledge |
| 76. | NPD General Order No. 02-01 Photo Identification Procedures, January 2, 2002, revised | | Irrelevant, misleading and confusing the issues |

#3931588

| 77. | General Order 66-9, Manual of Rules and Regulations | | | If this refers to General Order No. 65-9 then Plaintiff has no objection. Otherwise, Plaintiff does not know what document this refers to or whether it was produced in discovery, and Plaintiff objects on those basis, in addition to relevance, misleading and confusing the issues |

## DEFENDANTS ESSEX COUNTY PROSECUTOR'S OFFICE AND ROBERT D. LAURINO'S EXHIBIT LIST

| Exhibit Description | Offer | Admit | Objections |
|---|---|---|---|
| 1. Binder containing photographs of sex crimes kit and related items taken at ECPO on Nov. 17, 2017. | | | |
| 2. Binder containing NJSP Lab subpoena response. | | | |
| 3. NJSP Communication Log, printed Aug. 9, 2018. | | | |
| 4. Douard letter to Laurino, dated Dec. 17, 2004. | | | |
| 5. ECPO Chain of Custody Report. | | | |
| 6. Facsimile from Bolan to Douard with Roberts Consent for the Taking of Certain Body Samples, dated Mar. 10, 2005. | | | |
| 7. ECPO S.A.R.A. Unit report by Bolan, dated Sept. 12, 2005. | | | |
| 8. Laurino letter to Douard, dated Oct. 6, 2005. | | | |
| 9. ECPO Continuation Reports (2), dated Nov. 25, 2009. | | | |
| 10. Facsimile from Bolan to Rodriguez with OFS Evidence Receipt, dated Dec. 3, 2009. | | | |
| 11. Facsimile from OFS to ECPO with DNA Lab Report, dated Feb. 1, 2010. | | | |
| 12. ECPO Evidence Receipt, dated June 10, 2013. | | | |
| 13. Pastacaldi Memorandum, dated July 12, 2013. | | | |

#3931588

| | | | |
|---|---|---|---|
| 14. | OFS Evidence Receipt, dated Sept. 18, 2013. | | |
| 15. | Emails from/to Rodriguez/Laurino, dated Apr. 19, 2010 | | |
| 16. | Emails from/to Rodriguez/Rosenkrans, dated May 14, 2013 | | |
| 17. | Emails from/to Rodriguez, dated May 30-31, 2013 | | |
| 18. | Emails from Rodriguez/Straccamore, dated May 31, 2013 | | |
| 19. | Emails from/to Rodriguez/Stolarz, dated May 31/June 3, 2013 | | |
| 20. | Emails from/to Rodriguez/Stolarz, dated Aug. 16, 2013 | | |
| 21. | Emails from/to Witkowski/Rodriguez, dated Sept. 16, 2013 | | |
| 22. | Emails from/to Rosenkranz/Rodriguez, dated Nov. 12, 2013 | | |
| 23. | Emails from/to Laurino/Rodriguez, dated Nov. 21, 2013 | | |
| 24. | Email from Zangari to Rodriguez, dated May 17, 2010 | | |
| 25. | Letter from Rodriguez to Codey, dated May 18, 2010 | | |
| 26. | Emails from/to Witkowski/Rodriguez, dated June 10, 2013 | | |
| 27. | Email from Witkowski to Rodriguez with Continuation Report, dated June 13, 2013 | | |
| 28. | AG Guidelines re. Retention of Evidence; Rights for Crime Victims | | |
| 29. | Deposition of Robert D. Laurino, dated Mar. 15, 2018 [as necessary to refresh recollection]. | | |

#3931588

| 30. | Deposition of Michele R. Bolan, dated Mar. 12, 2018 [as necessary to refresh recollection]. | | | |
|---|---|---|---|---|

#3931588